### STEVENS LINEN WORKS v. WILLIAM & JOHN DON & CO. et al.

#### (Circuit Court, S. D. New York.   February 23, 1903.)

**1. TRADE-MARKS—LETTERS—USE TO INDICATE QUALITY.**
    For many years a manufacturer of crash toweling used letters of the alphabet stamped or printed thereon to indicate quality and width, some eight or more letters being so used, each representing crash of a particular grade and width.   *Held,* that such use did not give him a trade-mark right in the letters so as to preclude their use for similar purposes by other manufacturers.

**2. SAME—UNFAIR COMPETITION.**
    The fact that a manufacturer of crash used the same letters of the alphabet as a mark thereon to indicate the grade and width of the goods as were used by a competitor older in the business does not constitute unfair competition, where other distinctive labels and marks were used, and it does not appear that there was any intent to deceive purchasers as to the origin of the goods or that any one was so deceived.

In Equity.   This cause, which is to restrain the infringement of a trade-mark and unfair competition, and seven others of like import were argued at the October term of this court, pursuant to a stipulation consolidating the eight causes and consenting that they be argued together as one cause.

Joseph C. Clayton and Henry W. Williams, for complainant.
George Wilcox, for defendants.

COXE, Circuit Judge.   The bill in case No. 1 alleges that the complainant's predecessor, in or before November, 1865, originated, devised and adopted a certain trade-mark for "crash" consisting of the letter A printed, stamped or otherwise affixed upon said crash and that it has been used in the business ever since.   The bill alleges further that the defendants have recently adopted and are using upon crash manufactured by them the letter A substantially identical in appearance with the complainant's trade-mark; that this action of the defendants was for the purpose of defrauding, misleading, confusing and deceiving the public and was intended to depreciate the value of complainant's trade-mark, all of which constituted unfair competition in business. The demand for relief is for an injunction and an accounting.

The answer denies all the material allegations of the bill and alleges that the letter A was adopted by the complainant to indicate grade, quality and dimension and until the alleged trade-mark was registered, in May, 1900, complainant never made any claim to the contrary; that the letter A had been used by defendants for 20 years prior to the commencement of the suit to indicate grade, quality and dimension, and for no other purpose, and that this use was known to and acqui-

¶ 2. Unfair competition, see notes to Scheuer v. Muller, 20 C. C. A. 165; Lare v. Harper & Bros., 30 C. C. A. 376.

esced in by the complainant. The pleadings in the other suits are, mutatis mutandis, similar, the only substantial difference being that they relate to other letters of the alphabet.

If a technical view were to be taken of the situation it might be said with considerable plausibility that in no event, in the circumstances developed here, can a charge of unfair competition be predicated of the use of the letter A upon a single line of crash. The court understands, however, that the defendants' counsel consents that the controversy be considered as if all the causes of action were united in a single bill.

There is no serious dispute regarding the principal facts. Over 30 years ago the complainant's house adopted eight letters of the alphabet and stamped them upon eight distinct crashes, used for toweling, manufactured by them. Over 20 years ago the defendants stamped similar letters upon similar crashes and have been doing so ever since. The complainant admits that it knew of these acts of the defendants several years before the actions were brought and the presumption is strong that it must have known of them for a much longer period, especially if their use, as claimed, had an injurious effect upon the sale of complainant's goods.

Although only eight of the complainant's alleged trade-marks are involved it appears that it asserts ownership in seven additional letters of the alphabet. In 1888 it registered as a trade-mark an artistic design for a label to be applied to its crash toweling; so that, if its present contention be sustained, it will have sixteen distinct trade-marks to distinguish a single line of merchandise.

The testimony is overwhelming that these letters indicate, and during all the times in controversy have indicated, quality and dimension. Mr. Stevens, the president of the complainant, testifies that "the quality is designated by the letter, and I cannot tell you any better about the quality than by the letter. The letters which I have indicated as seeing stamped upon the crash at the beginning indicated a width and a quality, and have ever since continued to represent a width and a quality." Other persons in authority in the complainant corporation testify to the same propositions. The sales cards issued to the trade show not only that this is the fact but that complainant so understood it and did not pretend that these letters indicated origin and ownership.

Take, for instance, the card dated January 15, 1901, found at page 181 of defendants' record, being a "Limited Net Price List of Stevens Crash." Opposite the letter A appear the figures "16 in. 7. 7¾," under the words "Width," "Price. Brown. Bleached," respectively; indicating that A crash is 16 inches wide and costs 7 cents per yard if brown and 7¾ cents per yard if bleached.

There is other evidence tending to show that for over 50 years letters have been used to designate the different grades of crash. Indeed, it is difficult to perceive how this could be otherwise.

When it is remembered that there are at least 15 different grades of crash toweling, what more natural than that they should be distinguished by letters or figures? But when it appears, further, that figures had already been appropriated to indicate length, it would seem that there was no simple and sensible system of designation left except to

use the letters of the alphabet. If one manufacturer may appropriate all the letters and another all the digits it is manifest that it will require more than ordinary intelligence for remaining manufacturers to present their goods intelligently to the trade.

The court has been unable to find a case where a trade-mark in a letter, much less in eight letters, has been sustained in circumstances like those appearing in the present litigation. Trade-marks in letters, and figures, usually in arbitrary combination, have in rare instances been upheld, but never in cases where the letters and figures were originally adopted for the primary object of indicating class, grade, style or quality. Lawrence Mfg. Co. v. Tennessee Mfg. Co., 138 U. S. 537, 11 Sup. Ct. 396, 34 L. Ed. 997; Deering Harvester Co. v. Whitman Co., 33 C. C. A. 558, 91 Fed. 376, and cases cited.

The bill cannot be sustained upon the theory of unfair competition in trade. It must be admitted that there is a growing tendency in the courts to push this doctrine beyond what this court believes to be reasonable limits, and to introduce a spirit of paternalism into the administration of equity jurisprudence beyond the scope of its legitimate authority. The essence of the action is fraud, which here, as everywhere, should be proved and not inferred from every trivial and inconsequential similarity. Where two parties are engaged in selling goods of the same class it is inevitable that the competition will produce friction and that the agents of each in their zeal to secure customers will indulge in exaggerated laudation of their own goods and depreciation of the goods of their rivals. This is well understood and discounted by all who have the least familiarity with the customs of trade and should furnish no basis for the intervention of a court of equity. In the case at bar there is no evidence of fraud.

There can be no dispute that the defendants were at liberty to make the crash in question, and that they had the legal right to indicate the quality by the use of letters. What then is the accusation against them? There is no pretense that they have sold any of their crash as the complainant's crash or that any buyer has been deceived or misled. Attached to the complainant's goods is the trade-mark label with the words "Stevens Crash 1846" prominently printed thereon. The words "Stevens Linen Works" are stamped on the goods in large blue letters. On the other hand, the defendants' goods have a distinctive label on which the words "Absorbent Crash" is prominently printed and on every piece of crash sent to this country the words "Made in Great Britain," or "Made in Scotland" are stamped. No one with his faculties in a normal condition could possibly mistake the one for the other.

Two witnesses called by the complainant were asked if they should receive an order for crash, simply designating the letter and not the manufacturer, how they would fill it. They answered that they would send the Stevens crash. They did not pretend that they, or any one else, had ever received such an order and it is plain that they answered as they did because they dealt principally in the Stevens crash which was popular in their communities. But giving to the answers their full significance it is not easy to see how they establish fraud or deception or the existence of any confusion in the goods. If the answers had been that the order would have been filled by the defend-

ants' crash, or by either complainant's or defendants' indiscriminately, there might be more plausibility in the contention.

The complainant is surely not injured by an understanding which induces dealers to fill all orders of a general character with the Stevens goods. There is no evidence that the complainant's business has been injured; on the contrary it has, apparently, increased steadily. In 1866 the production was 4,000,000 yards annually and at the present time it is more than 12,000,000 yards annually.

The defendants' house has been engaged in business longer than that of the complainant and has achieved a deserved reputation for fair and honorable business dealing. It is quite improbable that such men would enter upon a course of petty deception and the court is unable to find any proof to sustain the charge.

The language of the Chief Justice in Lawrence Mfg. Co. v. Tennessee Mfg. Co., supra, seems peculiarly applicable to the present litigation. He says, page 551, 138 U. S., and page 402, 11 Sup. Ct., 34 L. Ed. 997:

"But the deceitful representation or perfidious dealing must be made out or be clearly inferable from the circumstances. If, in this case, the letters LL formed an important part of plaintiff's label, and the defendant had used them in such a way and under such circumstances as to amount to a false representation, which enabled it to sell and it did sell its goods as those of the plaintiff, and this without plaintiff's consent or acquiescence, then plaintiff might obtain relief within the principle of the cases just cited. But there is no such state of facts here. The brands are entirely dissimilar in appearance, and the letters have for years been understood generally as signifying grade or quality, and .been so used by different manufacturers, and there is no proof justifying the inference of fraudulent intent, or of deception practiced on the plaintiff or on the public."

It is, of course, unnecessary to discuss the defense of laches.

The bills are dismissed, but as the cases have been tried together the defendants are entitled to but one bill of costs.