## Wytheville

### BENJ. T. CRUMP CO., INC., v. J. L. LINDSAY, INC.

#### June 23, 1921.

1. UNFAIR COMPETITION—*Using Competitor's Advertising—Case at Bar.*—Complainant and defendant were competitive jobbers in automobile accessories, buying their goods from the same manufacturers and distributing them in the same territory. Defendant's catalogue included about seventy pages which were photographic copies of pages in complainant's catalogue. This complainant charged constituted unfair competition. Complainant's catalogue was not copyrighted. The catalogues were easily distinguishable from each other and there was no attempt to mislead the public or palm off the goods of defendant as those of the complainant.

   *Held:* That, notwithstanding complainant had incurred considerable expense in the preparation of its catalogue, defendant's action in incorporating these pages in its own catalogue did not constitute unfair competition.

2. UNFAIR COMPETITION—*What Constitutes—Each Case Dependent on Its Own Facts.*—It is impossible to formulate a general rule or definition from which it may be accurately determined what is fair competition and what is not, for at least each case must depend for its correct solution on its own peculiar facts and circumstances.

3. UNFAIR COMPETITION—*What Constitutes—Advertising Matter.*—Competing merchants, both of whom have the unquestioned right to sell similar goods, may certainly, as incidental to such right to sell, reproduce all attractive advertising matter commending such goods to the trade in similar language, if such language is unprotected by copyright or otherwise. The ownership gives the right to sell, and in the public interest trade should be as far as possible left untrammeled. Manufacturers and dealers have the right to protect themselves from imitations by patents, trademarks, copyrights, and labels, and, while unfair competition and fraud should be and will be restrained in proper cases, no impediments to fair trade should be imposed by the courts, except for the protection of substantial rights which cannot be otherwise protected.

4. UNFAIR COMPETITION—*What Constitutes—Essential Element.*—
   The essential element of unfair trading is deception by means
   of which goods of one dealer are palmed off as those of another,
   whereby the buyer is deceived and the seller receives the profit
   which, but for such deception, he would not have received.

5. UNFAIR COMPETITION—*Advertising Matter—Code of 1919, Section 1455.*—Code of 1919, section 1455, expressly authorizes the
   adoption of a form of advertisement for the purpose of designating, making known, or distinguishing any goods, wares, or
   merchandise, etc., provides for the registration thereof, and
   makes it a misdemeanor for any other to counterfeit or imitate such form of advertisement, or to circulate any such
   imitation thereof. The inference from the enactment of such
   a statute clearly is that one who desires a monopoly of the
   precise form of his advertisements should take advantage of
   its provisions.

Appeal from a decree of the Chancery Court of the city
of Richmond. Decree for defendant. Complainant appeals.

*Affirmed.*

The opinion states the case.

*R. W. Carrington* for the appellant.

*S. S. P. Patteson* and *J. P. Sadler* for the appellee.

PRENTIS, J., delivered the opinion of the court.

[1] The undisputed facts of this case are, that the appellant, Benjamin T. Crump Company, Inc., and the appellee,
J. L. Lindsay, Inc., are competitors in the business of selling
automobile accessories. They are jobbers, who buy their
goods from the same manufacturers, and distribute them in
the same territory. About July 1, 1919, the Crump Company issued its catalogue, designated as Catalogue No. 3,
and about September, 1920, the Lindsay Company issued
its catalogue, designated as Catalogue No. 20. The appellant
alleges that it discovered in the latter part of September,

1920, that the catalogue of the Lindsay Company included about seventy pages which were photographic copies of pages in the appellant's catalogue. The bill charges that this constitutes unfair competition, seeks to enjoin the Lindsay Company from issuing or using its catalogue in its business, and to have those copies which have already been issued recalled.

There were both an original and an amended bill, and the defendant having failed to plead, answer or demur, the case was heard upon the bill taken for confessed, and upon certain depositions taken by the complainant. The trial court refused to grant the injunction or the relief prayed for, and dismissed the bill.

It is admitted by the appellant that until the recent decision of *International News Service* v. *Associated Press,* 248 U. S. 215, 39 Sup. Ct. 68, 68 L. Ed. 211, 2 A. L. R. 293, the established doctrine was that in order to justify a court of equity in granting an injunction to restrain unfair competition, the acts complained of must be of such a nature as to be likely to deceive the public, or to amount to an attempt to pass off one man's business or merchandise as that of another, and that this was essential in order to constitute unfair competition. It is, however, claimed, and argued with vigor and ability, that since that decision this doctrine, relied upon by the defendant is no longer binding. It is urged that the law of unfair competition, considered apart from any questions of copyright, patents, trademarks, trade names, and the like, is of very recent development and is now in the process of growth and evolution. That the doctrine is in process of evolution is true, but we do not think the case referred to has overruled or discarded all previous limitations of the rule. That was a controversy between the International News Service and the Associated Press. The complaint of the Associated Press was that its rival in business took advantage of it by pirating its news

which had been gathered at great expense, and published it as its own; that it was able to do so by reason of the fact, as expressed by the court, that "most of the foreign news reaches this country at the Atlantic seaboard, principally at the city of New York; and because of this, and of time differentials, due to the earth's rotation, the distribution of news matter throughout the country is principally from east to west; and, since in speed the telegraph and telephone easily outstrip the rotation of the earth, it is a simple matter for defendant to take complainant's news from bulletins or early editions of complainant's members in the eastern cities, and at the mere cost of telegraphic transmission cause it to be published in western papers issued at least as early as those served by complainant. Besides this and irrespective of time differentials, irregularities in telegraphic transmission on different lines, and the normal consumption of time in printing and distributing the newspaper, result in permitting pirated news to be placed in the hands of defendant's readers sometimes simultaneously with the service of competing Associated Press papers; occasionally, even earlier." The question there was whether the Associated Press whose sole business was the furnishing of news to its members, and which had gathered general information and news at great expenditure of money, time and labor, for the purpose of subsequent publication through the press, has such an interest therein as may be protected from interference, and the court said that while it had been raised many times, it had never perhaps, been raised in the precise form in which it was there presented. Treating the case as one of unfair competition, it was held that the news which the Associated Press had acquired at a substantial cost could be sold fairly at a substantial profit, and that its chief competitor in business who was misappropriating it for the purpose of disposing of it for its own profit and to the disadvantage of the com-

plainant could not be heard to say that it is too fugitive or evanescent to be regarded as property. It was held that such news had all the attributes of property necessary for determining that a misappropriation of it by a competitor is unfair competition because contrary to good conscience. The controlling idea of the court is thus expressed: "Stripped of all disguises, the process amounts to an unauthorized interference with the normal operation of complainant's legitimate business precisely at the point where the profit is to be reaped, in order to divert a material portion of the profit from those who have earned it to those who have not, with special advantage to defendant in the competition because of the fact that it is not burdened with any part of the expense of gathering the news. The transaction speaks for itself, and a court of equity ought not to hesitate long in characterizing it as unfair competition in business." It must be borne in mind that the subject of that controversy was the right to sell such news, for publication, news itself being the commodity from which both the litigant parties derived their profit. Even there, however, the court was careful to say this: "It is to be observed that the view we adopt does not result in giving to the complainant the right to monopolize either the gathering or the distribution of the news; or, without complying with the Copyright Act [U. S. Comp. St. §§ 9517-9524, 9530-9584], to prevent the reproduction of its news articles; but only postpones participation by complainant's competitor in the processes of distribution and reproduction of news that it has not gathered, and only to the extent necessary to prevent that competitor from reaping the fruits of complainant's efforts and expenditure, to the partial exclusion of complainant, and in violation of the principle that underlies the maxim, 'Sic utere tuo,' etc." The news not being copyrighted, its use by the public after its publication was not restrained, and the injunction re-

strained the competing company from using it only so long as it had special value as news. All other persons, who were not competitors, might freely utilize it from the moment of its first publication. The court distinctly recognized the unbroken line of decisions relating to unfair competition between traders, and sanctioned the general doctrine, characteristic of this class of cases, that there is no unfair competition unless the defendant attempts to palm off its goods as those of the complainant, distinguishing that case from the usual controversies between traders because the news matter was itself the material from which the two competing parties were endeavoring to profit; expressing this idea in this way: "Regarding news matter as the mere material from which these two competing parties are endeavoring to make money, and treating it, therefore, as *quasi* property for the purposes of their business, because they are both selling it as such, defendant's conduct differs from the ordinary case of unfair competition in trade principally in this: that, instead of selling its own goods as those of complainant, it substitutes misappropriation in the place of misrepresentation, and sells complainant's goods as its own."

A consideration of these expressions and of the subject matter of that controversy shows how remote that case is from this. While the present case is one of first impression in this State, there have been very many cases in other jurisdictions involving similar questions. Because of this it is deemed advisable to emphasize the guiding rule as well as to cite several of the cases which are considered most pertinent.

[2] Here it is observed that the grievance is the coyping of parts of a competing merchant's catalogue, which is a mere advertisement, commending goods which both had the right to sell. It is impossible to formulate a general rule or definition from which it may be accurately determined what

is fair competition and what is not, for at last each case must depend for its correct solution on its own peculiar facts and circumstances.

In 26 Ruling Case Law 875, unfair competition is thus defined: "Unfair competition ordinarily consists in the simulation by one person, for the purpose of deceiving the public, of the name, symbols, or devices employed by a business rival, or the substitution of the goods or wares of one person for those of another, thus falsely inducing the purchase of his wares and thereby obtaining for himself the benefits properly belonging to his competitor. The rule is generally recognized that no one shall by imitation or unfair device induce the public to believe that the goods he offers for sale are the goods of another, and thereby appropriate to himself the value of the reputation which the other has acquired for his own product or merchandise."

This is a fair statement from Hopkins on Trademarks, Tradenames and Unfair Competition (3d ed.) section 2: "Unfair competition consists in passing off one's goods as the goods of another, or in otherwise securing patronage that should go to another, by false representations that lead the patron to believe that he is patronizing the other person. It is of vital importance to healthy business conditions that such competition should be suppressed. It is equally important, however, that fair competition shall not be interfered with. Whether the competitive acts complained of are fair or unfair is the controlling issue in each litigated case."

The courts of equity can certainly be relied on to extend their protection to the legitimate trader and protect him from unfair competition, however new and subtle the efforts may be on the part of a rival to infringe upon his rights; but they should also be as careful to encourage, and refuse to interfere with, fair competition as they are to restrain unfair competition.

In *Perlberg* v. *Smith,* 70 N. J. Eq. 642, 62 Atl. 442, we find this discussion, which we think most appropriate in this case: "Care must be taken in these cases not to extend the meaning of the word 'unfair' to cover that which may be unethical but is not illegal. It may be unethical for one trader to take advantage of the advertising of his neighbor, but his so doing would in many instances be entirely legal. If one dealer advertises extensively and at great expense the sale of a staple article, or of any article which he has not the exclusive right to vend, his neighbor may undoubtedly endeavor to cause the customers attracted to the neighborhood by the advertising to purchase the same or a similar article at his store instead of at the store of the advertiser."

In *Coats* v. *Merrick Thread Co.,* 149 U. S. 566, 13 Sup. Ct. 967, 37 L. Ed 850, we find this expression: "There can be no question of the soundness of the plaintiff's proposition that, irrespective of the technical question of trade-mark, the defendants have no right to dress their goods up in such manner as to deceive an intending purchaser and induce him to believe he is buying those of the plaintiffs. Rival manufacturers may lawfully compete for the patronage of the public in the quality and price of their goods, in the beauty and tastefulness of their enclosing packages, in the extent of their advertising, and in the employment of agents, but they have no right, by imitative devices, to beguile the public into buying their wares under the impression they are buying those of their rivals."

This from the late Chief Justice Winslow, of Wisconsin, in *Manitowoc Malting Co.* v. *Milwaukee Malting Co.,* 119 Wis. 546, 97 N. W. 389, is also a clear statement of the rule: "Unfair competition in trade is not confined to the imitation of a trademark, but takes as many forms as the ingenuity of man can devise. It may consist of the imi-

tation of a sign, a trade-name, a label, a wrapper, a package, or almost any other imitation by a business rival of some distinguishing earmark of an established business, which the court can see is calculated to mislead the public and lead purchasers into the belief that they are buying the goods of the first manufacturer."

The rule is thus stated in a note in 20 C. C. A. at p. 167: "Coming then to the specific rule constituting the doctrine of unfair competition in respect to the sale of vendible commodities, it may be stated as follows: Independently of the existence of any technical trade-mark, no manufacturer or vendor will be permitted to so dress up his goods, by the use of names, marks, letters, labels, or wrappers, or by the adoption of any style, form, or color of packages, or by the combination of any or all of these *indicia,* as to cause purchasers to be deceived into buying his goods as and for the goods of another." Many cases are there cited as supporting this rule.

In *Lamb* v. *Grand Rapids School Furniture Co.,* (C. C.), 39 Fed. 475, rival manufacturers of furniture issued similar catalogues. They were manufacturing similar furniture, each had the lawful right to do so, and this is said: "The manufactures of the complainants are not patented. The defendants may lawfully manufacture just such goods. Can they not publish correct illustrations of them as adjuncts of their sale? Ought they to be restrained from doing this because the complainants, having done this same thing, have copyrighted illustrations which, while representing their own goods, represent those of the defendant also? It is clear that the books of both parties are published and used solely as means for advertisement. To say that the defendant has not the right to publish correct illustrations of its goods must practically result in creating a monopoly in goods modeled on those designs, in the complainants, and thus give all the benefits of a patent upon un-

patented and unpatentable articles. Sales of merchandise are made largely by samples, and when the articles are bulky, as in case of furniture, illustrations are the only representations that can be made to the eye of the public at large; and it is altogether likely that to withdraw the right to make them from one of the parties would put him out of the field of competition. It does not appear to me that such results can be accomplished in this way. It is true there is an appearance of profiting at another's expense, and reaping what another has sown, but I can see no legal ground on which this can be prevented."

In the case just cited, it is noted, the defendant, in advertising its own goods, had used illustrations from a copyrighted book, while here the catalogue of the Crump Company was not protected by copyright.

In the case of *J. L. Mott Iron Works* v. *Clow,* 82 Fed. 316, 27 C. C. A. 250, the complainant had issued a price catalogue containing illustrations of its wares, such as washbowls, bath tubs, footbaths, etc., and the court held that such articles could not be the subject of artistic treatment, and therefore were not the proper subject of a copyright; hence it refused to enjoin the defendant from copying the designs or cuts found in the catalogue of the complainant, or their publication in the catalogue of the defendant.

In *Baker* v. *Selden,* 101 U. S. 99, 25 L. Ed. 844, this language of Lord Romilly, so pertinent to the pending case, is quoted from *Colbert* v. *Woodward,* L. R. 14 Eq. 407: "This is a mere advertisement for the sale of particular articles which anyone might imitate, and anyone might advertise for sale. If a man, not being a vendor of any of the articles in question, were to publish a work for the purpose of informing the public of what was the most convenient species of articles for household furniture, or the most graceful species of decorations for articles of home furniture, what they ought to cost and where they might be

bought, and were to illustrate his work with designs of each article he described, such a work as this could not be pirated with impunity, and the attempt to do so would be stopped by the injunction of the court of chancery; yet if it were done with no such object, but solely for the purpose of advertising particular articles for sale, and promoting the private trade of the publisher by the sale of articles which any other person might sell as well as the first advertiser, and if, in fact, it contained little more than an illustrated inventory of the contents of a warehouse, I know of no law which, while it would not prevent the second advertiser from selling the same articles, would prevent him from using the same advertisement provided he did not in such advertisement by any device suggest that he was selling the works and designs of the first advertiser."

In *Potter Drug & Chemical Corp.* v. *Pasfield Soap Co.,* (C. C.) 102 Fed. 493, there was a controversy between two toilet soap manufacturers, one of whom used the word "Cuticura" as a trade mark. The defendant also manufactured and put upon the market a toilet soap under the name of "Cuticle" soap. The defendant had wrapped its soap in a printed circular advertising it for similar purposes. As to this circular the court says: "In the body of the complainant's circular are at least three sentences or paragraphs, the very words of which have been transferred to the defendant's circular. This pilfering of language is obvious, but the circulars themselves are entirely unlike in appearance, size, and usually unlike in matter, although there are similarities other than those to which attention has been called. The reverse side of the defendant's circular is blank, while that of the complainant contains advertisements in several foreign languages. Notwithstanding the unfavorable opinion that must attach to this act of the defendant in using the language of the complainant's circular, yet it cannot be concluded that such act had any effect

in misleading persons proposing to purchase complainant's soap." So here, the differences in the two catalogues are so marked that notwithstanding the unfavorable comment which may be justly made upon the appellee, it cannot be concluded therefrom that such conduct had any effect in misleading persons who proposed to buy its goods. To extend the jurisdiction of the courts of equity to censorship of the advertising matter of competing merchants, who have equal and identical rights to advertise and sell the merchandise involved, where no pecuniary damage is alleged, can hardly be sustained as protecting any substantial private right, or as promotive of any public interest.

In *Stevens Linen Works* v. *Don & Co.* (C. C.), 121 Fed. 173, where one manufacturer of crash toweling sought to enjoin a rival manufacturer from using identical letters of the alphabet as marks thereon to indicate the grade and width of the goods, the complainant having used those letters for many years, this is said: "The bill cannot be sustained upon the theory of unfair competition in trade. It must be admitted that there is a growing tendency in the courts to push this doctrine beyond what this court believes to be reasonable limits, and to introduce a spirit of paternalism into the administration of equity jurisprudence beyond the scope of its legitimate authority. The essence of the action is fraud, which here, as everywhere, should be proved and not inferred from every trivial and inconsequential similarity. Where two parties are engaged in selling goods of the same class, it is inevitable that the competition will produce friction and that the agents of each, in their zeal to secure customers, will indulge in exaggerated laudation of their own goods and depreciation of the goods of their rivals. This is well understood and discounted by all who have the least familiarity with the customs of trade and should furnish no basis for the intervention of a court of equity. In the case at bar there is no evidence of fraud."

In the same case this is quoted from *Lawrence Mfg. Co.* v. *Tennessee Mfg. Co.*, 138 U. S. 551, 11 Sup. Ct. 402, 34 L. Ed. 997: "But the deceitful representation or perfidious dealing must be made out or be clearly inferable from the circumstances. If, in this case, the letters LL formed an important part of plaintiff's label, and the defendant had used them in such a way and under such circumstances as to amount to a false representation, which enabled it to sell and it did sell its goods as those of the plaintiff, and this without plaintiff's consent or acquiescence, then plaintiff might obtain relief within the principle of the cases just cited. But there is no such state of facts here. The brands are entirely dissimilar in appearance, and the letters have for years been understood generally as signifying grade or quality, and been so used by different manufacturers, and there is no proof justifying the inference of fraudulent intent or of deception practiced on the plaintiff or on the public."

The law of unfair competition is but an expansion of the common law of trade-marks; and in controversies between manufacturers and merchants the essence of the wrong is the sale of the goods of one as the goods of the other. *Hanover Star Milling Co.* v. *Metcalf*, 240 U. S. 403, 36 Sup. Ct. 357, 60 L. Ed. 718.

In *Heide* v. *Wallace & Co.* (C. C.), 129 Fed. 650, the doctrine of unfair competition is thus stated: "After a careful consideration of the various cases bearing on the subject, the conclusion was reached in *Draper* v. *Skerrett* (C. C.), 116 Fed. 206, that, to justify a court of equity in interfering in an alleged case of unfair competition, there must be something more than the mere duplication by the one party of the other's trade-name, and that this was to be found in the deceptive use of imitative methods of display or other device by which the public are led into buying the infringer's

goods where they intended to buy those of the original producer; the fraud so perpetrated being a legitimate ground for equitable interference, and the practical basis of it." It is there said that in such cases this is the standard by which the complainant's right to relief must be judged. Citing *Stevens Linen Works* v. *Don & Co.* (C. C.), 121 Fed. 171; *Allen B. Wrisley Co.* v. *Iowa Soap Co.*, 122 Fed. 796, 59 C. C. A. 54.

That case (*Heide* v. *Wallace & Co.*) was affirm in 135 Fed. 347, 68 C. C. A. 16, and Dallas, J., quotes this from the opinion of the trial judge, referring to the packages sold by the rival dealers: "There is nothing whatever to suggest an attempt to catch the unwary purchaser, and inveigle him into taking the one when he was seeking the other; nor could the most careless be deceived, except as he was in reality unconcerned as to which he got."

In *Bickmore Gall Cure Co.* v. *Karns*, 134 Fed. 834, 67 C. C. A. 439, it is said: "Undoubtedly, where two persons are engaged in selling like goods, neither of them has or can acquire the exclusive privilege to aptly designate and describe them, or to attractively present them for sale, with appropriate directions for their use." In the same case it is said that neither of them has the right to do any of these things in such manner as insidiously to mislead purchasers into the belief that his wares are those of his competitor.

In *Rathbone, Sard & Co.* v. *Champion Steel Range Co.*, 110 C. C. A. 596, 189 Fed. 26, 37 L. R. A. (N. S.) 259, this is held: "The placing upon the market of a stove, the design of which is copied from that of a rival manufacturer cannot be restrained as unfair competition, if the earlier design had been so recently produced that the public had not become familiar with it as designating the product of the designer, so as to be deceived into buying the copy as his, where the copyist uses his own name and trade-mark

on his product, so that there is no attempt to palm it off as that of his rival.".

While the case just cited does not involve the copying of advertising material, it nevertheless illustrates the principle, and it seems to us to follow, inevitably, that if one may copy and reproduce the goods of a rival manufacturer, and thus fairly compete with him for the public patronage in the sale of such goods, then competing merchants, both of whom have the unquestioned right to sell similar goods, may certainly, as incidental to such right to sell, reproduce all attractive advertising matter commending such goods to the trade in similar language, if such language is unprotected by copyright or otherwise. The ownership gives the right to sell, and in the public interest trade should be as far as possible left untrammeled. Manufacturers and dealers have the right to protect themselves from imitations by patents, trade-marks, copyrights and labels, and while unfair competition and fraud should be and will be restrained in proper cases, no impediments to fair trade should be imposed by the courts, except for the protection of substantial rights which cannot be otherwise protected.

*Van Kannel Revolving Door Co.* v. *American Revolving Door Co.*, 131 C. C. A. 650, 215 Fed. 582, was a controversy between two manufacturers of revolving doors, where one had so advertised his door as to cause his competitor to charge him with unfair competition, and this is said: "While, therefore, plaintiff can have no exclusive rights in design, phrase, or picture, nevertheless it is entitled to protection against such use of them by defendant as would constitute fraudulent or unfair competition with it. The bill alleges that ' by its wrongful acts above set forth the defendant has diverted to itself trade and custom to which plaintiff was entitled, and that it otherwise would have received.' Clearly, this is insufficient to sustain a bill to restrain unfair competition. Defendant's acts, as set forth

in the bill, are not wrongful, and cannot be made so by mere characterization; the trade is open to all honest competition; that plaintiff 'was entitled' to it does not negative defendant's equal right to secure it by lawful means."

This language appears to be peculiarly apposite in the present case. The defendant's advertisement of goods which were similar in every respect to the goods which the complainant had a right to sell, must of necessity have been quite similar to the advertisements of the complainant commending the same goods. There can be no fair allegation of fraud arising out of the fact that advertisements relating to similar goods were themselves similar. Each has an equal right to compete for the trade by lawful means and the most attractive advertising methods, which are not prohibited.

It is well to remember the caution of Lord Mansfield in *Sayre* v. *Moore,* 1 East 361, relating to copyright cases, where he said: "We must take care to guard against two extremes equally prejudicial; the one that men of ability who have employed their time for the service of the community, may not be deprived of their just merits, and the reward of their ingenuity and labor; the other that the world may not be deprived of improvements, nor the progress of the arts be retarded. The act that secures copyright to authors guards against the piracy of the words and sentiments; but does not prohibit writing on the same subject."

So, in cases of this character, we should avoid extremes equally prejudicial. That which a court of equity will enjoin is unfair competition, but to hold that competing merchants having the right to sell similar goods may not use identical advertisements to commend them to the public notice, where there is neither fraudulent nor deceptive attempt to pass off the goods of the seller upon an unwary

purchaser who desired to buy and thought he was buying the goods of another dealer, would be novel, extreme and unwise.

In *Farmers' Handy Wagon Co.* v. *Beaver Silo & Box Mfg. Co.*, 150 C. C. A. 63, 236 Fed. 738, which is cited for the appellant, the court was considering an alleged infringement of a patent, and decided that the charge of unfair competition might be united with the allegation that the patent had been infringed. It is in that connection that the court refers to the appropriation of the advertising literature by the defendant, and therefore the case is not authority upon the question here involved, because here each of the litigants have equal right to advertise their commodities, while there the defendant had no right either to sell or to advertise the devices which infringed the patent.

Mr. Justice Field, in *Goodyear's India Rubber Glove Mfg. Co.* v. *Goodyear Rubber Co.*, 128 U. S. 598, 9 Sup. Ct. 166, 32 L. Ed. 535, in denying relief in that case, said this: "Relief in such cases is granted only where the defendant, by his marks, signs, labels, or in other ways, represents to the public that the goods sold by him are those manufactured or produced by the plaintiff, thus palming off his goods for those of a different manufacture, to the injury of the plaintiff."

[4] The esssential element of unfair trading is deception, by means of which goods of one dealer are palmed off as those of another, whereby the buyer is deceived, and the seller receives the profit which, but for such deception, he would not have received.

The case most nearly like this, so far as we are advised, is *Hamilton Mfg. Co.* v. *Tubbs Mfg. Co.* (D. C.), 216 Fed. 410. There, however, instead of two competing merchants, as here, there were two rival manufacturers, one of whom was making, advertising and selling articles which were imitations, except in minor details, of those made and sold by

the complainant. The evidence was held insufficient to establish the charge of unfair competition, or to entitle complainant to an injunction, and this is said as to the complaint that the defendant was copying the complainant's catalogue: "Regarding the cuts and pictures in complainant's catalogue and its circulars and advertising matter, which it is claimed the defendant company copied, it appears that the catalogue was not copyrightable. As a proper and necessary means of advertising, it was distributed to complainant's customers and used in soliciting trade, and was designed to reach an indefinite number of dealers, who, in transacting their business, were at liberty to exhibit it to a still larger but indefinite number of purchasers. No implied contract, as charged in the bill, was shown with customers to whom the catalogue was sent, retaining ownership thereof in the complainant and prohibing its gift by consumers to complainant's competitors. Representatives of the defendant company and of Binner, Wells & Co., of Chicago, who prepared the engravings for the defendant's catalogue, testified at length as to the various steps leading up to the production of the cuts from which the engravings were made. A great volume of testimony was introduced, on the one hand to show, and on the other hand to disprove, that the complainant's catalogue, was, to a considerable extent, copied by the defendant company. * * * There is no denial of the use of the catalogue of the complainant and of other manufacturers in preparing that of the defendant company, but this seems to be a familiar practice to a considerable extent in the building of catalogues. The point on which the parties differ is the extent of such use. Whatever the extent and method pursued may have been, I am of the opinion that the defendant company drew considerably from the complainant's catalogue in the preparation of its own. Even errors found in some of the cuts of the complainant's catalogue appear in the cuts of

the defendant. The Tubbs Company's catalogue was issued for the purpose of advertising its goods for sale and promoting its trade by the sale of its manufactured articles, and, such being the fact, if it did copy from complainant's catalogue cuts of articles which it might sell as well as the complainant, it committed no offense of which the court can take cognizance." Citing *Baker* v. *Selden,* 101 U. S. 106, 25 L. Ed. 841; *Lamb* v. *Grand Rapids School Furniture Co.* (C. C.), 39 Fed. 474; *Mott Iron Works* v. *Clow,* 82 Fed. 319, 27 C. C. A. 250; *Jewelers' Mercantile Agency* v. *Jewelers' Weekly Publishing Co.,* 155 N. Y. 241, 49 N. E. 872, 41 L. R. A. 846, 63 Am. St. Rep. 666. "Without enumerating the differences between the two catalogues suffice it to say that they are so apparent as to preclude belief on the part of the customer of ordinary intelligence that the defendant's catalogue is an advertisement of the complainant's wares, and there was consequently no invasion in this respect of complainant's rights, nor was there any such invasion, on the facts of this case, by the defendant, by its copying from the complainant's catalogue and circulars, descriptive matter, weights, dimensions, and the like, in so far as that was done. *Potter Drug & Chemical Corp.* v. *Pasfield Soap Co.* (C. C.), 102 Fed. 490."

The briefs for the Crump Company cite a number of cases relating to special trade information, a typical case being *F. W. Dodge & Co* v. *Construction Information Co.,* 183 Mass. 62, 66, N. E. 204, 60 L. R. A. 810, 97 Am. St. Rep. 412, where the plaintiffs collected and compiled early information relative to the proposed erection of buildings, the construction of sewers, water works, etc., for sale to its subscribers, who appear to have been merchants, contractors and builders, who desired to use such information with the reasonable expectation of profit from getting it promptly by making contracts and selling supplies, and the

court said: "The information is not visible, tangible property, but there is a valuable right of property in it, which the courts ought to protect in every reasonable way against those seeking to obtain it from the owner without right, to his damage."

So likewise the distribution of quotations of prices on dealings upon a board of trade which were collected by the plaintiff and confidentially communicated to numerous persons under a contract not to make them public, is entitled to the protection of the law just as trade secrets are. This right to privacy is not lost to a plaintiff who has collected such valuable information at his expense even though it be communicated to many persons in confidence under such a contract, and strangers can be restrained from using such information, which they acquire only by inducing a breach of trust by those entitled to the quotations, but under obligation to maintain such secrecy. *Board of Trade* v. *Christie Grain & Stock Co.*, 198 U. S. 250, 49 L. Ed. 1039, 25 Sup. Ct. 637; *National Teleg. News Co.* v. *Western U. Teleg. Co.*, 56 C. C. A. 198, 119 Fed. 294, 60 L. R. A. 805.

[5] In this case, however, there is neither valuable information of such character, nor breach of confidence, nor news involved, but mere advertising. Much emphasis is laid upon the fact that the Crump Co. incurred considerable expense, one of its employees having spent about ten months in compilation of its catalogue, of which about four or five months was exclusively devoted to this work. The purpose, however, was merely to commend and advertise goods which were identical with those which the Lindsay Company also had the right to praise, advertise and sell. Courts should be careful not to create a monopoly in advertising. In effect, this is what we are asked to do in this case—*i. e.*, to hold that an advertisement of merchandise, because it was composed and printed at great expense, al-

though neither copyrighted or registered, cannot be utilized. by another who has equal right with the one claiming such a monopoly to advertise and sell similar merchandise. In this conection it is observed that we have a statute in this State (Code 1919, sec. 1455 *et seq.*), which expressly authorizes the adoption of a form of advertisement for the purpose of designating, making known, or distinguishing any goods, wares, or merchandise, etc., provides for the registration thereof, and makes it a misdemeanor for any other to counterfeit or imitate such form of advertisement, or to circulate any such imitation thereof. The inference from the enactment of such a statute clearly is, that one who desires a monopoly of the precise form of his advertisements should take advantage of its provisions.

Reverting to the facts of this case, it appears that these catalogues are easily distinguishable from each other. For example, the color of the cover of the Crump catalogue is gray, its size 6 3/4 x 10, and it has 480 pages; while the cover of the Lindsay catalogue is of a different color, being very light green with a dark brown border, has a larger page, it being 7 3/4 x 10 3/4 inches in size and contains only 280 pages. Each catalogue has at the top of each page the corporate name, one that of the Crump Company and the other that of the Lindsay Company. So that there is nothing in the appearance of the Lindsay catalogue either to the casual or acute observer suggestive of an effort to take away the trade of the Crump Company by fraudulently or unfairly simulating its catalogue. Every cut appearing in both catalogues was supplied by the manufacturers, and would have been furnished to any other jobber.

As to the precise injury, it seems too impalpable to be grasped, even by the astute counsel for the appellant, for in his petition for the appeal, he uses this language: "We can conceive of no basis upon which any actual damages could be ascertained with any degree of certainty, nor have we

introduced any testimony relating to ascertainment of any actual damages." He there contended, however, that if there was a right of action at law for exemplary damages, the court of equity should award such damages; but in his reply brief he says this: "Frankness compels us to state that a thorough examination of authorities leads us to believe that a court of equity has not jurisdiction to award punitive damages. And, as stated in our petition, we can conceive of no basis upon which actual damages could be ascertained with any degree of certainty."

In view of these concessions there seems to us to be little left as a basis for complaint except pride of authorship. An injury which is thus manifestly a mere state of mind, as to which no actual damages can be even alleged, does not afford ground for equitable intervention or relief.

The function of courts is to determine and declare the legal rights of litigants, and they are not vested with power to prevent breaches of ethical rules which violate no law. We do not mean, however, to express approval of the practice of making photographic copies of advertising material of a rival in business without his consent. Indeed, the disapproval of the appellant is justified. A fair consideration of the facts of this case, however, and a proper regard for judicial precedents and expressions, which we believe to be based upon right reason and a scrupulous regard for the substantial rights of litigants, as well as of the interests of the public, for the preservation of fair competition in trade, lead us to conclude that there is no error in the decree of the trial court dismissing the bill.

*Affirmed.*

SIMS, J., concurring:

I concur in the result of the majority opinion in this case, but I reach that result by a somewhat different view of the principles involved.

I agree that, as the catalogue of the complainant, Crump Co., is not copyrighted or copyrightable and is not protected by the Virginia statute referred to in the majority opinion, that company had no property right *per se* in the precise form of illustrations and descriptive printed matter contained in its catalogue concerning certain articles offered for sale, and no monopoly of such form of advertisement. But, as I understand the position of such company, taken in the bill and in argument in its behalf, it does not contend that it has such rights. It admits that the defendant, Lindsay Company, had the right to have printed and furnish to its trade a catalogue which, as to illustrations and descriptive printed matter concerning the said articles offered for sale, might be the *fac simile* of the portion of the Crump Company catalogue in question. What the Crump Company complains of is *the method by which the Lindsay Company produced its catalogue,* and not of the form of the catalogue as in fact produced. The Crump Company concedes that the Lindsay Company had a perfect right to produce the same result which it did produce, provided it had done so by some method which was not rendered less expensive by photographic copy and use by it of portions of the Crump Company catalogue. But the claim of the Crump Company is, that the latter method, being an unauthorized appropriation and use by the Lindsay Company of the result of the work and expenditure of the Crump Company, the use by the Lindsay Company of the result of such method constitutes unfair competition in business, and therefore should be enjoined by a court of equity.

Now from any standpoint such a method of business is unquestionably unfair, and is not supported by any right of the company so acting to so appropriate and use the result of the work and expenditure of another. But under our system of jurisprudence a court of equity will not adjudicate an abstract question of whether a defendant pos-

sesses a right of conduct. Subject to certain exceptions which do not embrace cases of the character of that now before us, the principle on which rests the jurisdiction of a court of equity to grant injunctive relief at the suit of a complainant is that otherwise the complainant is threatened with the infliction upon him by the defendant of some substantial injury for which there is no adequate remedy at law. However without right the conduct of a defendant may be, substantial injury threatened to the complainant is essential, in such a case as that before us, in order to invoke the exercise of the jurisdiction of a court of equity to grant injunctive relief to the complainant.

It is at this point that the Crump Company fails to make out its case. It has failed to show that the aforesaid unfair conduct of the defendant, Lindsay Company, in any way threatens it with substantial injury. . If it had shown that the aforesaid conduct of the Lindsay Company threatened it with substantial injury by lessening its profits, by reducing its sales, or otherwise, I would feel that the injunction sought should be awarded. I do not feel that such an injunction would, in such case, mean that it would sustain a monopoly in the form of the illustrations and descriptive advertising matter aforesaid.

To illustrate: As the case stands upon the record before us, it is merely one in which the defendant, Lindsay Company, has, by the conduct in question, created for itself an opportunity to take away some of the trade of the Crump Company, as for example by cutting prices, or, if prices are not cut, an opportunity to make a larger percentage of profits on its sales, as compared with the net percentage of profits the complainant company has the opportunity to make on its sales. But it is obvious that if the Lindsay Company has not cut prices, or threatened to do so, and if the gross sales and total net profits of the Crump Company have not otherwise in fact been at all lessened, or threatened to be lessened, by the conduct of the defendant

company, the Crump Company, has not been injured or threatened with injury. And there is no evidence in the case tending to show that the Lindsay Company will take advantage of its opportunity to take away from the Crump Company a part of its trade rather than pursue the course of merely enjoying the larger percentage of profits aforesaid. In the absence of any evidence on the subject, we cannot assume that the former rather than the latter course will be pursued. So that the case in truth is one in which, so far as appears from the record, the complainant seeks to have the defendant injoined, not from conduct which, as now appears, will lessen the complainant's business and profits, and so injure it, but from conduct which may (and solely because it may) only enhance the defendant's profits. In the absence of statute forbidding such conduct or such result, there is no principle upon which courts of equity can exercise a jurisdiction to award injunctive relief in such cases. It is on this ground that I concur in the majority opinion.