Thomas F. **KYHOS** et al., Appellants,

v.

**PERPETUAL SAVINGS AND LOAN ASSOCIATION**, Appellee.

No. 72-1607.

United States Court of Appeals, Fourth Circuit.

Argued Feb. 8, 1973.

Decided June 18, 1973.

---

5. Terry v. Ohio, 392 U.S. 1, 23, 24, 27, 28, 30, 88 S.Ct. 1868, 20 L.Ed.2d 889; Bell v. Kansas, 10 Cir., 452 F.2d 783.

Dillard C. Laughlin, Arlington, Va., (Phillips, Kendrick, Gearheart & Aylor, Arlington, Va., Samuel Scrivener, Jr., and Scrivener, Parker, Scrivener & Clarke, Washington, D. C., on brief), for appellants.

George P. Blackburn, Jr., Springfield, Va. (John L. Scott and Scott, Blackburn & Clary, Springfield, Va., on brief), for appellee.

Before WINTER and RUSSELL, Circuit Judges, and MURRAY, District Judge.

WINTER, Circuit Judge.

Thomas F. Kyhos and others, shareholders of Perpetual Building Association (Perpetual Building), brought a class action on behalf of all shareholders against Perpetual Savings and Loan Association (Perpetual Savings) to restrain the latter from using the generic word "Perpetual" as part of its corporate name, and to obtain an accounting of profits with an award of damages for alleged wrongful appropriation of the trade name "Perpetual." Perpetual Building and Perpetual Savings both carry on some business activities in the same portion of Virginia. Jurisdiction was founded on diversity of citizenship. The district court dismissed the complaint, first because it concluded that Perpetual Building's name could not have acquired a secondary meaning in any part of Virginia, since applicable state law prohibited Perpetual Building from expanding its business into Virginia; and, second, because Perpetual Building had not otherwise proved that its name had acquired a secondary meaning entitled to protection under Virginia law.[1]

We disagree with the conclusion that Perpetual Building's name could not, under state law, have acquired a secondary meaning in that portion of Virginia where Perpetual Savings conducted its operations. Nor do we think that the district court's findings necessarily support its conclusion that Perpetual Building's name had not acquired a secondary meaning which was entitled to protection under state law. We, therefore, vacate the order of dismissal and remand the case for further proceedings.

### I.

Perpetual Building is a voluntary unincorporated association founded in the District of Columbia in 1881 with the name "Perpetual Building Association," which it has used continuously in its business as a building and loan association since that date. It has a main office in Washington, branch offices in Washington, and branch offices in the Maryland counties adjacent to the District of Columbia. It has never had an office in Virginia.

---

1. In arriving at this conclusion, the district court found that Perpetual Savings had not changed its name deliberately and knowingly to enable it to trade on Perpetual Building's long established good name. In this respect, we cannot say that the district court's finding of fact was clearly erroneous and we will not consider it further. We note, however, that the evidence on this issue was controverted. The corporate records of Perpetual Savings indicate that the name was changed because of "the strength and lasting quality associated with the word [Perpetual]," and the change was adopted after full discussion of the extensive advertising of Perpetual Building, so that there was full recognition of the presence and importance of Perpetual Building in the trading area. Upon the advice of counsel, the reason finally and publicly ascribed to the change of name was that Perpetual Savings intended to locate outside of Prince William County, yet the record shows that in the three years which have transpired, no such office has been established.

Perpetual Building has a membership of approximately 200,000 investing and borrowing members. Approximately 13,393 reside in the Commonwealth of Virginia, including approximately 1,972 in Prince William County, Virginia. Its assets have increased from $27,000 in 1882 to in excess of $550,000,000 in 1970. Although not authorized to "do business" in Virginia under Virginia law,[2] Perpetual Building has made loans to members residing in Virginia, secured by mortgages on Virginia real estate, totaling approximately $85,000,000. Many loans have been made to residents of Prince William County secured by mortgages on real estate in that county.

Perpetual Savings is an incorporated savings and loan association, formed on or about February 10, 1960, under the laws of the Commonwealth of Virginia, with the name "Prince William Savings and Loan Association." It has two offices in Prince William County, one of which is located in Woodbridge, Virginia, approximately 21 miles from the District of Columbia, and another in Manassas, Virginia, approximately 31.4 miles from the District of Columbia. Upon approval of appropriate Virginia regulatory authorities, Perpetual Savings would be entitled to open offices in other Virginia counties and cities and additional offices in Prince William County.

Perpetual Savings has never made loans secured by real estate outside the Commonwealth of Virginia, but it is authorized to do so if it so elects. Its business activities are devoted generally to serving the savings and loan needs of the residents of Prince William County, Virginia.

On January 1, 1970, Perpetual Savings changed its name from Prince William Savings and Loan Association to "Perpetual Savings and Loan Association." The change of name was approved by the Virginia State Corporation Commission, the Federal Home Loan Bank Board, and the Federal Savings and Loan Insurance Corporation notwithstanding the protest and opposition of Perpetual Building. At the time of change of name, Perpetual Savings had assets of approximately $4,544,000; two years later its assets had doubled to $9,372,000.

Over the last ten years, Perpetual Building has expended for advertising approximately $2,825,000—more than 40 times the amounts spent by Perpetual Savings for advertising. Perpetual Building advertises extensively on major radio and television network stations, the signals of which are received in (a) Washington, D. C., (b) Montgomery and Prince George's Counties, Maryland, (c) Arlington, Fairfax, Prince William and Loudoun Counties, Virginia, and (d) the cities of Alexandria, Falls Church and Fairfax, and in all major daily newspapers circulating in that area. Perpetual Savings advertises primarily in newspapers and with radio stations located in and serving Prince William County.

## II.

The conclusion of the district court that Perpetual Building's name had not acquired a secondary meaning in that

---

2. Code of Virginia (1973 Repl.Vol.), § 6.1–195.58 prohibits anyone other than a corporation chartered under the laws of Virginia from engaging "in the savings and loan association business in this State" and also prohibits a savings and loan association incorporated in Virginia from conducting its business "outside of this State." The section, however, provides that " . . . nothing in this chapter shall prevent any person from lending money on real estate or personal security or collateral . . . ." Code of Virginia (1973 Repl.Vol.) § 13.1–102.1

provides that "the investment by a foreign corporation in notes . . . other instruments secured by deeds of trust on property located in this State * * * the acquisition of such property at foreclosure sale, and the holding of title thereto for a reasonable time, while liquidating such investment, shall not be deemed transacting business in this State, provided the foreign corporation does not maintain an office or other place of business in this State, and provided, further, that the foreign corporation does not advertise for business in this State."

portion of Virginia in which Perpetual Savings carried on its operations was based upon its reading of *Food Fair Stores, Inc. v. Lakeland Grocery Corp.,* 301 F.2d 156 (4 Cir. 1962). It construed *Food Fair* to hold implicitly that the reasonable prospect of expansion of a business into Virginia was "a prerequisite to acquiring a secondary meaning in Virginia . . .." Since Virginia law prohibits Perpetual Building from "doing business" in Virginia, and since Perpetual Building disclaimed any intent to do business in Virginia in violation of Virginia law, it followed, in the view of the district court, that *Food Fair* barred Perpetual Building from relief.

We do not read *Food Fair* so to hold. In *Food Fair*—another diversity case where we were obliged to interpret and apply Virginia law—plaintiff, which operated a chain of retail grocery stores in various areas of the United States under the name "Food Fair," sought to enjoin the defendant from using that name for two supermarkets in the Norfolk-Portsmouth area. Plaintiff, at the time that defendant first used the name, did not own or operate a store in that area although its name was generally well known and extensively advertised nationally.

The district court dismissed the suit because it concluded that the plaintiff had neither established that its name had acquired a secondary meaning in the area, nor that at the time the defendant opened its store, the area was within the region into which the trade of the plaintiff might reasonably be expected to extend in the natural expansion of its business. We reversed. We discussed the holding with regard to the extension of plaintiff's business into the Norfolk-Portsmouth area, and said "it has been generally held that the owner of a trade name may enjoin infringement in territory to which his business has not yet extended . . . [P]rotection of trade name may be given if persons residing in the area with knowledge of the trade name are likely to be confused by an infringement." *Id.* 162. We also

discussed the existence or non-existence of good faith on the part of the second user as a critical element. Then we stated:

> In the instant case we do not have to pass on the relevant weight of the testimony as to the elements which entered into the problem. The evidence of all the necessary elements at the time of the infringement were proved by substantial evidence. It was shown that the plaintiff's business and trade name were known to a substantial number of persons in the Norfolk-Portsmouth area and that the probability of an expansion of the plaintiff's business into the area existed and that the defendant deliberately and knowingly appropriated the plaintiff's name for its own business . . .. Under this combination of circumstances we reach the conclusion that the plaintiff's name was entitled to protection . . ..

*Id.,* 163.

We do not interpret the quoted portion of *Food Fair,* as did the district court, to hold that expansion into a territory is a prerequisite to the acquisition of a secondary meaning of one's trade name in that territory. In *Food Fair,* the district court considered *Hanover Star Milling Co. v. Medcalf,* 240 U.S. 403, 36 S.Ct. 357, 60 L.Ed. 713 (1916) which held that an established trade name is entitled to protection not only in the area in which its owner renders services or sells goods, but also in areas to which the owner's business activities may reasonably be expected to expand. It held, on the facts of *Food Fair,* that the Norfolk-Portsmouth market was beyond the reach of the probable expansion of plaintiff's business. We were responding to this holding. In the exercise of diversity jurisdiction, we were applying Virginia law as expressed in *Rosso & Mastracco, Inc. v. Giant Food Shopping Center,* 200 Va. 159, 104 S.E. 2d 776 (1958). *Rosso* enunciated no Virginia rule that probable expansion is a condition precedent to relief. We, therefore, conclude that *Food Fair* does

not establish any requirement under Virginia law that probable expansion is a prerequisite to acquiring a secondary meaning in an area in which actual business is not conducted.

■ Moreover, we are impressed by a certain artificiality in the assertion that Perpetual Building is not engaged in business in Virginia. Although Perpetual Building was neither "doing business" nor was it authorized to "do business" in Virginia in accordance with the Virginia statutes, the fact is that, lawfully, it had a substantial number of customers in Virginia, and particularly in Prince William County, and had made a number of loans secured by the pledge of real estate in those jurisdictions. We do not think that in the context of an alleged misappropriation of a trade name, we ought to be blinded to realities by the technical niceties of Virginia's concept of a building and loan association's "doing business." The business of a building and loan association is to receive deposits and make loans. This, Perpetual Building was doing for residents and property owners of Prince William County and other parts of Virginia. Under Virginia law, this was permitted; Perpetual Building could foreclose its liens and recover the obligations due it in the event of default. That Perpetual Building was not permitted to establish an office in Prince William County or elsewhere in Virginia might limit the extent of its business, but, with the availability of present day communications and travel, it can hardly be said to have eliminated it.

## III.

■ The leading Virginia case on the subject of enjoining the use of the same or a similar trade name as a species of unfair competition is *Rosso*. See also Crump Co. v. J. L. Lindsay, Inc., 130 Va. 144, 107 S.E. 679 (1921). *Rosso* established as the Virginia rule that to constitute unfair competition in the use of a trade name, two elements must be present: (1) that plaintiff's name has acquired a secondary meaning, and (2) that defendant has unfairly used plaintiff's name, or one similar, to the prejudice of plaintiff's interests.[3]

In application of this doctrine, the district court found

(23) There exists some, but not a substantial amount of, confusion among customers and prospective customers in Virginia by reason of the resemblance between the name Perpetual Building and Perpetual Savings, although there is no evidence that there has been any financial detriment to either institution as a result of such confusion. In making this finding the Court has considered, but given only slight weight to the survey conducted by Data Unlimited.

\*    \*    \*    \*    \*    \*

(25) A person of ordinary intelligence, using reasonable care and observation, ought not to confuse Perpetual Building Association with Perpetual Savings and Loan Association.

■ Taken at face value, these findings could be dispositive under the Virginia rule stated. But after making these findings, the district court substantially diluted them in the legal discussion of its Memorandum Opinion and Order. After holding, erroneously as we have concluded, that a prospect of expansion of plaintiff's business into Prince William County was a prerequisite to acquiring a secondary meaning in

---

3. Somewhat enigmatically *Rosso* adds:

One who claims that a name used by him in connection with his business has acquired a secondary meaning has the burden of proof, and that burden is a substantial one, that is, must be sustained by a fair preponderance of evidence *or* by substantial evidence to show that the use of the trade name by another *will* result to the prejudice of the complainant. (emphasis added)

*Id.*, 104 S.E.2d 780. Thus *Rosso* suggests that secondary meaning may be established by proof of probable future prejudice, so that the two elements may be only one. See n. 4, infra.

the trade name used, the district court significantly said:

Under the circumstances here, confusion arising from the resemblance of the names, even from present or prospective customers, is not alone sufficient to support the evidence of a secondary meaning.

This statement, in our view, indicates that findings (23) and (25), and their legal impact, have been lessened by the district court's erroneous view of the inability of Perpetual Building's name to have a secondary meaning in Prince William County.

While we do not presently say that findings (23) and (25) are clearly erroneous, there was substantial evidence to show actual as well as potential prejudice. The poll conducted by Data Unlimited showed that 43.4% of those surveyed by telephone in Prince William County knew of a company with "Perpetual" in its name in the Washington, D. C. metropolitan area, and 12.7% gave the name of the company as Perpetual Building. Why the district court considered, but gave "only slight weight" to this survey was not stated by the district court. We do not consider it binding on the district court, but the absence of an assigned reason in the context of the erroneous basic premise raises considerable question.

Additionally, 11 customers or potential customers of Perpetual Building testified that they had been confused between Perpetual Building and Perpetual Savings and the president of Perpetual Building and eight of its other employees testified as to many instances of confusion of the two trade names by customers and potential customers since Perpetual Savings had changed its name. This testimony might not have been persuasive because of the factor of credibility which the district court was in a better position to judge than we; but again, in the context of the district court's erroneous view of a basic premise, we think something less than a persuasive resolution of the facts has been made.[4] In this connection, there may be significance in the fact that Perpetual Savings doubled its assets in the two years following its change of name—a matter as to which the district court made no findings.

To summarize: We think that, now that we have ruled that Perpetual Building's name could have acquired a secondary meaning in Prince William County, the district court should determine if Perpetual Building's name has acquired a secondary meaning in Prince William County, and if so, should re-examine its findings with regard to actual or potential confusion arising from the resemblance of the names. Accordingly, we vacate the order of dismissal and remand the case to the district court for further proceedings in accordance with the views expressed herein.

Vacated and remanded.

4. The statement in *Rosso* that proof of probable future prejudice is proof of secondary meaning suggests the converse, i. e. that proof of secondary meaning may constitute proof of prejudice or at least give rise to a presumption of prejudice. In other jurisdictions it is held that once a secondary meaning of a trade name has been established, the likelihood of confusion is presumed and there is a burden on the secondary user to show that confusion is unlikely, Metropolitan Fed. S. & L. A. of New York v. East Brooklyn Sav. Bk., 319 F.Supp. 393, 397 (E.D.N.Y. 1970), or, as held in Norwich Pharmacal Company v. Sterling Drug., Inc., 271 F.2d 569, 571 (2d Cir. 1959), that once secondary meaning has been established, a plaintiff need further establish merely the likelihood of confusion to prevail.