# Richmond

JOSEPH KISS, JR. v. J. T. GALE, ET AL.

April 26, 1948.

Record No. 3309.

Present, All the Justices.

The opinion states the case.

*Jas. G. Martin & Sons* and *A. A. Bangel*, for the appellant.

*William · G. Maupin*, for the appellees.

BUCHANAN, J., delivered the opinion of the court.

This appeal is from a decree denying Kiss an injuction to restrain Gale and his codefendants from operating a

grocery business in competition with a similar business operated by Kiss.

By contract dated January 5, 1946, Gale sold to Kiss for $9,000 the stock, fixtures and licenses of the going concern of G. G. Super Market—a grocery, wine and beer store located on George Washington highway, near Davis street, in Norfolk county.

By written contract of the same date, Gale leased to Kiss the premises in which the business was being conducted at a rental of $85 a month for a term of five years, with an option to renew for an additional term of five years.

In the contract of sale, Gale, the seller, agreed "that he will not engage in a like or similar business with or without compensation for himself as partner or as employee within a radius of one mile of said establishment for a period of ten (10) years."

In November, 1946, Kiss brought this suit in equity against Gale, Levine and Silverthorne, alleging that Levine was a silent partner and joint owner with Gale of the business so purchased; that Gale and Levine, in combination and conspiracy with each other and with Silverthorne, well knowing of said agreement, and in violation thereof, had established and were operating a competing business in the same block and were ruining the plaintiff's business. The bill prayed that the defendants be enjoined from so doing and required to pay to the plaintiff his damages.

The three defendants filed separate answers under oath. Gale denied that Levine was a silent partner and joint owner of the business sold by him to Kiss; denied the combination and conspiracy alleged, and asserted that he had no interest as partner or employee in the business conducted by Levine and Silverthorne. The answer of Levine made similar denials and averred that the business complained about was wholly owned by himself and Silverthorne and that Gale had no interest in it and owned no part of it. Silverthorne's answer likewise asserted that he was a partner with Levine in the competing business and that Gale had no interest in it, was not a partner or employee and was

not entitled to and had never received any compensation therefrom.

The evidence was heard *ore tenus* by the trial judge. At the conclusion of the evidence for the plaintiff, the defendants moved "for a dismissal." The court announced that it would sustain the motion to strike the evidence and dismiss the bill. A decree was entered sustaining the motion of defendants "to dismiss the bill," and it was accordingly dismissed. The plaintiff assigns error to this ruling and to rulings excluding certain testimony offered by him.

There was no evidence that Silverthorne had any interest in, or connection with, G. G. Super Market, or that he had any knowledge of, or any concern with, the contract between Gale and Kiss. He and Levine admitted in their answers, as stated, that they owned and operated the competing business, which is called the Economy Service Store and is located four doors from the G. G. Super Market, but the record contains no evidence against Silverthorne's right to do so.

Levine was not a named party to the contract between Kiss and Gale, and there is no evidence that he knew of or agreed to the covenant made by Gale. The evidence introduced by the plaintiff to establish the charge in the bill that Levine was a silent partner was this:

Several months before the sale to Kiss, S. B. Churn tried to buy the business but the price was too high. He talked to both Levine and Gale about it, but not together. Levine told him he did not want to sell the store but his partner did, and that his partner was Dr. Gale, but Churn did not know whether Levine said he owned a part interest in the store. Churn talked to Gale later and Gale told him he would sell it for $8,000. Churn sold goods to the store which were invoiced to G. G. Super Market, and he received checks therefor signed by Gale, but remembered none signed by Levine.

Frank W. Dixon sold merchandise to the store, and whoever was manager of the business would take the invoices to Levine or Gale over in Gale's drugstore, where Levine

worked, but he could not testify that Levine signed any checks.

M. O. Raynor was interested in buying the store and was told to call Gale's drugstore to find out about it. He did so and Mr. Levine answered the telephone and told him the price was $10,000.

The court refused to admit, because too remote, testimony from C. W. Graves that he worked in the store over a year as manager, but left in May, 1944, when Levine came in and said he was coming to take over. Graves then asked Levine whether he owned the store or whether it was owned by Gale, and Levine replied that he did not own it. Levine took it over and Graves saw Gale the same night and told him he would not work for Levine. Later Graves told Gale he would like to have a chance to buy the store. Gale came back in a day or two and said no, he was going to put all his business under one head.

The court also refused to admit testimony by Kiss to the effect that while he was trying to buy the place from Gale for $8,000, Levine "was holding back on the price" by stating "the store is too good a store to be given away inasmuch as it is giving a substantial profit to the owner, and the store deserves a higher price." Kiss added that he asked Gale several times whether he was sole owner, in view of Levine's activity, and Gale told him he was the sole owner. On cross-examination of Kiss on the question of admissibility of this testimony, Kiss said that before he bought from Gale, Levine told him he was a silent partner and joint owner of the property.

The court also refused to admit a receipt for $85 for rent for September, 1946, signed by Levine, and a check made by Kiss to Gale for this $85 payment, endorsed by Gale but deposited to the credit of Lone Oak Inn, in which Gale was a partner with Levine and another.

While we think the rejected testimony should have been admitted, both the admitted and rejected testimony together was not sufficient to establish the charge that

Levine was a silent partner with Gale in the G. G. Super Market.

Kiss testified that Gale told him explicitly in the office of Kiss's attorney, when the contract was being signed, that he was the sole owner of the business. It seems highly improbable, if Levine had previously claimed to be a silent partner, that Kiss would not then have so stated. Yet, he and his attorney made no effort to bind Levine by the contract made with Gale.

The circumstances relied on to establish Levine's partnership with Gale indicated no more than his employment by Gale. Other than these circumstances, and the inconclusive testimony of Churn, the only evidence tending to prove partnership is the supposed statement of Levine to Kiss. Kiss did not claim on his direct examination that any such statement was made by Levine. His reference to it on his cross-examination was casual and accompanied by no details as to time, place, words or substance. The existence of such a partnership was denied on oath by both Gale and Levine in their answers (Code, sections 6127, 6128). There was no attempt to prove that Levine received any part of the purchase price for the store or that he ever saw the contract of sale, or that he knew of or consented to be bound by Gale's covenant not to engage in a similar business. The evidence was not sufficient to connect Levine with Gale's covenant and to entitle the plaintiff to an injuction against Levine. Cf. 36 Am. Jur., Monopolies, section 70, p. 548; Anno., 94 A. L. R. 341.

Restraining contracts, like the one involved here, must be established by clear and satisfactory evidence before a court may properly grant an injunction to prevent an alleged breach. *Stoneman* v. *Wilson*, 169 Va. 239, 248, 192 S. E. 816.

The evidence introduced by the plaintiff against Gale proved that on the day the Economy Store opened, November 5, 1946, Gale was in the store all day opening the store door and letting custormers in and out, talking to people in the store, and behind the soda fountain handing out

cigarettes, while Levine and Silverthorne were busy in other parts of the store. At another time he was talking to one of the men in the store about something that was lost. About two weeks after it was opened, Gale was in the store waiting on customers, operating the cash register and giving change to customers. He was seen two or three times behind the counter with his coat off and the witness thought he was a clerk in the store. A day or two after the opening he was in the store waiting on customers and on a later occasion he was looking at the stock and putting cans on the shelves. On another occasion, soon after the store opened, the girl operating the cash register needed some change and Gale went to get it for her, and brought back a package of silver coins. A customer wanted some paper towelling. Gale went to look for it and reported that it was all gone.

Gale's covenant was that he would not engage in a competing business as a partner or employee with or without compensation. The letter and spirit of his promise were that he would not take part in a business within the proscribed area that would take away trade from the business he had sold to Kiss. He was a druggist and evidently a man of property who had built up a clientele at the place he sold, which the purchaser of that place did not want him to take away to a near by competing business. His presence and activities in the store on the opening day and on many other occasions would necessarily lead the people of the community to believe that he was interested in the business, with the probable result of bringing his former customers to that store. This evidence, undenied and unexplained, was sufficient to establish a violation of his covenant and the plaintiff was entitled to an injuction restraining him from those and like activities. Cf. *Kramer* v. *Old*, 119 N. C. 1, 25 S. E. 813, 56 Am. St. Rep. 650, 34 L. R. A. 389; *Smith* v. *Webb*, 176 Ala. 596, 58 So. 913.

There is conflict among the cases on whether the seller of a business who covenants not to engage in a competing business may become an employee of such competing busi-

ness. (Anno., 93 A. L. R. 122; 36 Am. Jur., Monopolies, etc., section 74, p. 551; *Stoneman* v. *Wilson, supra*). Here, however, the expressed covenant of Gale was not to engage in such business as a partner or as an employee.

The plaintiff offered, but the court excluded, evidence to show that the competing store was built on land owned by Gale, at Gale's expense and under his management and supervision, and that he arranged for the fixtures to be moved into it. This evidence was a circumstance to be considered with others on the subject of the alleged violation of the covenant and should have been received. However, as indicated, the evidence admitted was sufficient to prove the breach and to entitle the plaintiff to an injunction against Gale.

The motion of the defendants to dismiss the bill, which the court sustained, had the effect of submitting the case for decision on its merits on the plaintiff's evidence. Our reversal of the court's ruling that the plaintiff's evidence was not sufficient to entitle him to any relief against Gale results in a final judgment on that question.

In *Mooers* v. *Wilson*, 183 Va. 910, 917, 33 S. E. (2d) 791, 793, after the plaintiff had introduced all of his evidence, which was heard *ore tenus*, the defendant moved to strike it out on the ground that it afforded no proof of a valid and enforceable contract between the parties. Mr. Justice Gregory said on that point:

"This court, so far as we are informed, has never had before it procedure of this kind in a chancery suit. For the purposes of a decision of this cause in this court the action of the court below on the motion to strike the evidence upon the record before us will be considered a determination of the cause upon the merits. For, in final analysis, the effect of sustaining the motion to strike the evidence was a holding by the court that upon it, as a matter of law, the complainant had no case. Upon this appeal no actual question is presented, the only question presented is whether, as a matter of law, the evidence makes out a case."

The motion to strike the evidence in a law action has become a settled practice in this State, and when used within its restrictions and limitations has proved its usefulness (*Green* v. *Smith,* 153 Va. 675, 679-80, 151 S. E. 282; *Anderson* v. *Clinchfield R. Co.,* 171 Va. 87, 89, 198 S. E. 478); but the procedure of hearing evidence orally in a chancery cause, permitted by Acts, 1930, chapter 132, as amended by Acts, 1932, chapter 208 (Code, section 6228a), did not have, and we think should not be given, the effect of introducing into chancery practice the motion to strike the evidence, with the same scope and effect as in law actions.

In equity the chancellor sits as both judge and jury. He determines both the admissibility and the weight of the evidence, both the law and the facts. A motion to strike the evidence, as it is used in practice at law, would result in a sort of trial and error procedure, enabling a defendant, for example, to test the views of the judge on the plaintiff's evidence, obtain an expression of opinion on its weight, and shape his evidence accordingly. It would be a procedure similar to one permitting the defendant to submit to the jury a motion to strike the plaintiff's evidence because it did not make out a case, and in the event of an adverse verdict, to go forward then with his own evidence.

If such procedure were allowed in chancery it would apply to a case heard by depositions as well as *ore tenus.* The result would be that at the conclusion of the plaintiff's depositions the defendant could test their weight on a motion to strike. If he failed he might at least count on gaining expression from the court's ruling as to what he would need to meet the plaintiff's case. In addition to the possibility of unfairness in such a practice, it could well operate further to delay final disposition of chancery causes which now are frequently too long delayed.

If a defendant desires, he may submit the case on the plaintiff's evidence, but if he does, it must be at the risk of a final judgment by the trial court or by this court. He cannot be given two bites at the cherry.

This conclusion does not, of course, apply to a jury trial of an issue of *devisavit vel non,* of which the trial judge has the same right of supervision and control as in common law actions. *Culpeper Nat. Bank* v. *Morris,* 168 Va. 379, 384, 191 S. E. 764. Nor does it apply to a jury trial of an issue out of chancery, the object of which is to satisfy the conscience of the chancellor and over which the power of the court is broader than in common law actions. See *Eastern Finance Co.* v. *Gordon,* 179 Va. 674, 20 S. E. (2d) 522.

The plaintiff offered to introduce evidence in the trial court to prove his damages. This was, by consent, deferred until the issue as to the existence of the breach was decided, with the suggestion that the question of damages might be referred to a commissioner.

It having been determined here that the plaintiff failed to prove his case against Levine and Silverthorne, but did prove a breach of the covenant by Gale, the decree appealed from is affirmed as to Levine and Silverthorne, but reversed as to Gale. An injuction will be awarded against Gale, as prayed for in the bill, and the cause remanded for a proper determination of the damages, if any, the plaintiff is entitled to recover against Gale.

*Affirmed in part, reversed in part and remanded.*