# Richmond

E. L. KLINGSTEIN v. RUSSELL P. EAGLE AND T. A. DERRER.

January 21, 1952.

Record No. 3858.

Present, Eggleston, Buchanan, Miller, Smith and Whittle, JJ.

The opinion states the case.

*Glenn W. Ruebush,* for the appellant.

*George S. Harnsberger* and *Francis S. Miller,* for the appellees.

MILLER, J., delivered the opinion of the court.

In this suit instituted by appellant, E. L. Klingstein, against appellees, Russell P. Eagle and T. A. Derrer, it was alleged and is now asserted that a partnership contract was entered into between the three parties for the purpose of obtaining and conducting a "sales and distributing agency" for Lincoln and Mercury automobiles in which each was to invest a stated sum of money and would participate equally in the net profits from the business, and that appellees breached the contract by wrongfully obtaining the dealer's agency for themselves which they exercised to the exclusion of appellant. Appellant prayed for a declaratory judgment establishing him as a member of the partnership, asked for an accounting of the firm's business and profits, a judgment for damages, and general relief.

In their answer appellees asserted that no partnership or contract to form a partnership had ever been entered into with appellant, denied breach of any contract with him, and said that he had in no wise contributed to their obtaining the agency for Lincoln and Mercury automobiles, and that they were not indebted to him in any amount. All material allegations of the bill were thus denied.

The evidence was taken in deposition form, and after that offered by appellant had been concluded, appellees moved the court to strike the evidence and dismiss the bill, which motion was argued. Some weeks later the chancellor advised counsel in open court that he had considered appellant's evidence and

indicated that he was ready to decide the cause on the evidence then before the court. However, before any decision was announced or ruling made, appellees asked leave to withdraw their motion to strike and to be permitted to take depositions. That request was granted over appellant's objection, and appellees took evidence in denial of the bill's allegations.

After all depositions had been submitted, the court concluded that appellant had failed to sustain his bill, denied the relief prayed for and dismissed the suit.

Fourteen errors are assigned. They may, however, be consolidated and stated as follows:

(1) The court should have denied appellees' request to withdraw their motion to strike appellant's evidence and should have determined the cause upon the evidence of appellant alone, and having failed to do so, that should now be done by this court.

(2) Although the trial court should have considered appellant's evidence only, yet on all the evidence the court erred in not sustaining the bill and granting the relief prayed. In this connection, appellant contends that he established by a preponderance of the evidence all allegations of the bill necessary to a decision in his favor.

The decisions of *Kiss* v. *Gale,* 187 Va. 667, 47 S. E. (2d) 353, and *Booker* v. *Old Dominion Land Co.,* 188 Va. 143, 49 S. E. (2d) 314, are relied upon by appellant to sustain his first contention. He asserts that the effect of appellees' motion to strike was to submit the cause to the court for decision upon the evidence then before it. From language used in the cases cited, he also insists that the submission was final, and to allow withdrawal of the motion and presentation of testimony by appellees was not discretionary and constitutes reversible error.

In *Kiss* v. *Gale, supra,* at p. 674, at the conclusion of plaintiff's evidence, motion was made "for a dismissal" which the court treated as a motion to strike the evidence and dismiss the bill. We there said:

"The motion of the defendants to dismiss the bill, which the court sustained, had the effect of submitting the case for decision on its merits on the plaintiff's evidence."

A similar announcement is found in *Booker* v. *Old Dominion Land Co., supra,* at p. 145. It is there stated:

"* * * a motion to strike plaintiff's evidence in an equity case

* * * has the effect of submitting the case on its merits on the plaintiff's evidence."

However what was said upon this subject in those cases had no reference to whether or not it is within the sound discretion of the chancellor to allow withdrawal of a motion to strike in a chancery cause before there has been any action thereon or announcement of the court's decision. That issue was not before the court in either case, nor do we construe the language there used as any announcement upon that precise question.

█ The chancellor in this case has stated in his decree that no decision had been announced upon the motion to strike, and that the rights of appellant would not be prejudiced by allowing its withdrawal. We find nothing in the record to question those assertions and conclude that the action taken was, under the circumstances disclosed, within the sound discretion of the chancellor.

This brings us to a consideration of whether or not the evidence sustains the judgment. On the testimony in deposition form, the decree is presumed to be correct and should not be disturbed for lack of proof if the controlling factual conclusions reached are sustained by a fair preponderance of the evidence. *Ashby* v. *Dumouchelle,* 185 Va. 724, 40 S. E. (2d) 493.

The vital question presented to us is whether or not appellant has proved by a preponderance of the evidence that appellees actually entered into a partnership or joint venture contract with him to secure the agency for distribution of Lincoln-Mercury automobiles, and if so, did they breach that contract.

Considerable testimony was taken that is irrelevant, hearsay and contradictory, and there is conflict in that offered by appellant and appellees. Summarized and stated as briefly as we can without impairing its force and legal effect, the material evidence follows:

Appellant, who is engaged in many businesses in and near Harrisonburg, Virginia, wanted to secure an agency (sometimes called a franchise) for the sale and distribution of automobiles, and that was also the desire of appellee, Derrer. Appellee, Eagle, was the owner of a building in Harrisonburg suitable for conducting therein such an enterprise, and he was willing to join the others in the business if an agency was obtained.

When it became known to each of the three that the others contemplated or might be interested in securing an agency, they

discussed the possibility of securing a Lincoln-Mercury contract and agreed to attempt to secure that franchise and form a partnership or corporation to conduct the business in Eagle's building. All three of the interested parties knew or were made aware of the fact that before the agency could be obtained, it would be necessary to secure the recommendation of Major H. M. Cunningham of Washington, D. C., the district manager in that area of the Lincoln-Mercury division of the Ford Motor Company. They also knew that his approval of the personnel of those to whom the agency might be granted had to be obtained, whether they conducted the business through a partnership or as a corporation.

Appellant testified that several conferences were held between Derrer, Eagle and him, and they orally agreed to and did form a partnership to obtain and operate this agency and business in which $25,000 was to be invested by the three, and the proportion thereof to be advanced by each was agreed upon, that Derrer was to give his full time and services to the partnership, and after payment to him of an agreed salary and other stated compensation the net profits were to be divided among the three. He also said that a lease was taken on Eagle's building, and while he, appellant, was sick and could not accompany him, Derrer made three or more trips to Washington (accompanied by Eagle twice), and interviewed Cunningham to secure his approval and recommendation for award of the agency to the three interested parties; that he (appellant) had several conversations over the telephone early in January, 1948, with Cunningham and his assistant, and was assured that the contract would be awarded them. He said that before actually granting the franchise, Cunningham sent Mr. Sigler, a field representative, to Harrisonburg to make a survey, and he assured appellant that the agency would be awarded them, and thereafter Cunningham's only requirement was that the stock and inventory to be carried be agreed upon, certain alterations made in the building, and other minor matters attended to, all of which were accomplished. Finally he said that Derrer told him after one trip to Washington that the agency had been secured for the three, but he later learned that appellees had wrongfully excluded him and secured it for themselves alone.

LeRoy Loewner, a brother-in-law and employee of appellant, testified that he was present at interviews had between the three

parties when the matter was discussed, and on one occasion, "it was agreed that 'Cap' (Klingstein) would look after the books, without salary; Mr. Eagle was to furnish and rent the building, without salary * * *. That is, Mr. Eagle's garage on North Main Street, * * *. And Mr. Derrer was to manage the business and to receive a salary. Then they were to divide their profits, if any, three ways."

When asked whether or not a formal partnership was ever entered into between the three or whether the discussions were merely leading up to its formation, his answer was:

"A. No, it sounded to me as if the business was completed.

"Q. For what car?

"A. Lincoln-Mercury.

   *  *  *  *  *  *

"A. And that the partnership was completed."

Ralph H. Garner, an employee of appellant, testified that he was present at a conversation between appellant and Derrer, and in reply to this question, the witness gave the following answer:

"Q. Was there any discussion as to what the relationship would be between these two people whether they were all in on this car agency, or not?

"A. Well, I just heard that Mr. Eagle and Mr. Derrer and 'Cap' were the three partners in it."

Fred R. Koontz, associated with appellant in the real estate business, testified that he was present when appellant and appellees had a discussion, and said:

"'* * * the gist of the conversation, as I recall, was that there were three going in together as a parnership, and that Klingstein—Mr. Klingstein was to put up some money, Mr. Eagle was to put up some money and also furnish the building and Mr. Derrer was to manage the agency."

Appellee, Derrer, testified he was interested in securing the Lincoln-Mercury agency, and upon learning from Klingstein that he was also interested, he (Derrer) contacted Eagle, and these three determined to apply for the franchise, and if awarded, the business would be operated by a corporation to be formed by them. He said that pursuant to this understanding he made trips to Washington to interview Cunningham and requested that a representative be sent to Harrisonburg to survey the situation, and that Sigler was sent by Cunningham as a result of that request. The witness said he took Sigler to inspect several loca-

tions, among which were Eagle's building, and then they talked with appellant. He denied that Sigler promised the agency to appellees and appellant. The second trip made by Derrer to Washington was shortly after Sigler's visit to Harrisonburg, and he said that this time he conferred with Cunningham and other representatives of Lincoln-Mercury division, and Cunningham informed him that the market possibilities in Harrissonburg were too small and limited for three persons, "two of whom would be inactive." However, Derrer made application for the agency in the names of the three interested parties, Derrer, Klingstein, and Eagle, but that application was not acceptable because of the reasons assigned by Cunningham. Upon Derrer's return to Harrisonburg, he said he informed appellant of the results of his conference, and he and Klingstein discussed more seriously the formation of a corporation, and at appellant's request, he returned to Washington about January 15, 1948, along with Eagle, and they again submitted an application which included Klingstein, but it was rejected because the agency was too small to have two inactive people connected with it, whether in partnership or corporation form.

Upon return of appellees to Harrisonburg, he said they notified appellant that the application had been turned down for this, the second time, and told him why. At their interview Derrer said that appellant told him and Eagle "You all go ahead and get it and deal me out then." However, Derrer said that a week or so later, he and Eagle returned to Washington, and once more requested consideration of the application as first made, that is, on behalf of the three parties. They were unsuccessful and the application was rejected for the third time, and upon suggestion of Cunningham, he and Eagle then applied for the agency. Upon their return to Harrisonburg, he said they informed appellee of what had transpired and told him that the application for the three had been finally refused but he and Eagle had applied for it, and thereupon Klingstein replied "Okeh." On March 22, 1948, Derrer received a letter from Cunningham advising him that he and Eagle had been awarded the agency.

Appellee, Eagle, testified that Klingstein contacted him about renting his building and later Derrer talked with him between Christmas 1947 and New Year 1948 about leasing the building for an automobile agency.

He said that thereafter he made two trips to Washington with Derrer in an attempt to secure the Lincoln-Mercury agency for a corporation in which he, Derrer and Klingstein would be the stockholders, but Cunningham would not approve an application for three persons, two of whom would be inactive, and upon his return from Washington he told Klingstein that the situation did not look favorable. He said that in a conversation later held with Klingstein, both he and Derrer advised appellant that the officials of Lincoln-Mercury division were unwilling to award the franchise to three people when only one would be an active participant, and thereupon Klingstein suggested that a corporation be then actually formed and Eagle's building rented so that they could convince Cunningham of their *bona fide* purpose to conduct such a business. On that occasion Klingstein said, "Let's give it another trial," but this witness also testified that appellant then told them that if they could not get the agency for the three, to "Just deal me out." After this meeting, Eagle and Derrer made another trip to Washington and exhibited an agreement from Eagle to lease the building to the proposed corporation and sought to have Cunningham agree to Klingstein's participation in the agency, but Cunningham again rejected that application. Eagle said that he was so insistent that Klingstein be included as an interested party, that Cunningham "wanted to know why I was interested in 'Klinestein' ". Upon this third rejection of the application, Cunningham suggested that he might recommend that the agency be granted to Eagle and Derrer provided Eagle would consider being an active partner. Appellees asked for a few days to consider that proposal, but Cunningham requested that they give him an answer that afternoon, whereupon they left his office but returned some few hours later and made application for the franchise in their own names without communicating with Klingstein. Eagle further said that Klingstein had authorized them to accept the franchise without him by having said, "If they won't consider it with me in it, just count me out."

Upon their return to Harrisonburg, Eagle, said that appellant was informed of what had taken place in Washington. Some weeks later when officially notified by letter that the franchise had been granted to them, Eagle gave up his other business interests and became actively associated as a partner with Derrer in the agency under the name of Royal Motor Company.

358

The testimony of H. M. Cunningham, district manager of the Lincoln-Mercury division, is that he supervises the sales and service of Lincoln-Mercury products in his district, and in such capacity, gets the pertinent facts on applications for dealership agencies and recommends to the home office the acceptance or rejection of the applications. He further said that he first met Derrer in his office in Washington, D. C., about January 1, 1948, and talked to him about an agency and that shortly thereafter Derrer returned and made application for the agency in the name of Derrer, Klingstein and Eagle. Cunningham then sent Sigler to Harrisonburg to check over the situation, and upon his report, he decided that the application for the three, Derrer, Klingstein and Eagle, should not be approved as he did not want to include Klingstein in the agency because of his interest in about fifteen different businesses, and thus he could not give his full time to the agency. He was satisfied with Derrer because of his experience in the automobile business, and thought Eagle; who owned a suitable building, would fit in if he gave up his other business interests and became an active participant in the agency. He also said that on two subsequent occasions Derrer and Eagle both called upon him and attempted to secure the agency for and on behalf of all three but he would not consent to Klingstein's inclusion because of the reason first assigned.

This witness also testified that later Klingstein telephoned him to inquire about the dealership, and he told Klingstein that the contemplated operation was considered too small for three parties if one or more was to be inactive, and at his suggestion the agency had been granted to Derrer and Eagle alone.

G. F. Horine, an assistant in Cunningham's office, testified that Klingstein talked with him on the phone about February 7, 1948, and he informed him that the dealership was too small for three people if one or more were to be inactive.

The evidence as a whole discloses that numerous discussions were had between appellant and appellees with a view to obtaining the Lincoln-Mercury agency, and it was agreed by all to secure it for the three if that could be accomplished, and if so obtained, it was their purpose to conduct a partnership or corporation in which all would participate. Yet a vital condition to obtaining the franchise was Cunningham's approval of those to whom it was to be awarded whether the business was to be operated as a partnership or corporation.

■■ Under these circumstances a relation of confidence and trust was created and existed between appellant and appellees that obligated appellees to use utmost good faith and their best efforts to secure the agency for the three if that could be accomplished. *Horne* v. *Holley,* 167 Va. 234, 188 S. E. 169; 40 Am. Jur., Partnership, sec. 128, pp. 217-218; section 50-21, Code of Virginia, 1950. The evidence, however, establishes that though repeated and earnest efforts to that end were made by them, their endeavors were to no avail, and only after it definitely appeared that further insistence and effort in that respect would be wholly futile was it that they made application for themselves alone. And, we think a preponderance of the evidence discloses that appellant had agreed that if Cunningham would not recommend that the agency be awarded to the three, then in that event appellees might accept it themselves.

Consummation of the partnership between appellant and appellees was expressly contingent upon award of the franchise to the three, and that contingency, which was not within appellees' control, was well known and agreed to by appellant, and its failure was in no wise due to the fault or any lack of good faith on the part of appellees.

In our opinion the trial court's conclusion that appellant failed to sustain the allegations of his bill by a preponderance of the evidence is correct, and the decree appealed from is affirmed.

*Affirmed.*