## 𝕾taunton

Rosso and Mastracco, Incorporated, Trading as Giant Open Air Market v. Giant Food Shopping Center of Virginia, Incorporated, Giant Food Shopping Center, Incorporated, A Delaware Corporation, and Lebrad, Incorporated, Etc.

September 10, 1958.

Record No. 4820.

Present, Eggleston, C. J., and Spratley, Buchanan, Miller, Whittle and Snead, JJ.

The opinion states the case.

*Joseph E. Baker* and *M. R. Broudy* (*Richard F. Broudy; Broudy & Broudy*, on brief), for the appellant.

*Thomas H. Willcox* (*William P. Dickson, Jr.; Raymond R. Dickey; Bernard Gordon; Robert F. Rolnick; Willcox, Cooke, Savage & Lawrence; Danzansky & Dickey*, on brief), for the appellees.

SPRATLEY, J., delivered the opinion of the court.

Rosso and Mastracco, Incorporated, a Virginia corporation, trading as Giant Open Air Market, instituted this proceeding to enjoin the defendant, Giant Food Shopping Center of Virginia, Incorporated, from using the word "Giant," or any similar name or designation, in the conduct of the business of the latter, then or thereafter to be conducted in the City of Norfolk, Virginia, and the surrounding area. The plaintiff alleged in its bill that its trade name, "Giant Open Air Market," had acquired a secondary meaning, that is, a peculiar significance that associated it with plaintiff's store, in the mind of the public it served; and that the word "Giant" in the trade name of the defendant was likely to cause, and had caused, confusion among the consuming public in the area served by the plaintiff, to the damage of the plaintiff.

Giant Food Shopping Center, Incorporated, a Delaware corporation, the sole owner of Giant Food Shopping Center of Virginia, Incorporated, was, on its motion, admitted as a defendant. Likewise, Lebrad, Incorporated, a Delaware corporation, the proposed operator of the store of the Virginia corporation, was, on motion of the plaintiff, made a party defendant.

Giant Food Shopping Center of Virginia, Incorporated, hereinafter referred to as the defendant, answered, denying all of the material allegations in plaintiff's bill, and filed a cross-bill seeking to restrain plaintiff from using the word "Giant" in its trade name. In its answer it alleged that the names "Giant Food" and "Giant Food Shopping Center" had been used by it and the other defendants, in Virginia, since 1941, and in the Washington, D. C. metropolitan area since 1935; that the defendant operated a total of seventeen stores, three of which were in Virginia; and that their yearly rate of sales was in a large amount. The intervening defendant and the added defendant adopted the answer and cross-bill of the original single defendant.

The case was heard *ore tenus*. Plaintiff presented its evidence and announced that it rested its case. Thereupon defendant moved to strike the evidence on the ground "that there had been no showing as to confusion" between the trade names of the respective parties. The court, in a verbal opinion, stated that while the actual trade name, "Giant Open Air Market," had been shown to have a secondary meaning identifying it with plaintiff's business, there was no evidence to show that the single word "Giant" had acquired such a meaning, by use, registration, printing, or advertisement. The court then added that it was further of opinion that the trade names of the respective parties were "not so similar as to deceive the ordinary buyer," or create confusion. The motion to strike was then sustained and the bill of the plaintiff was ordered to be dismissed. Upon motion of defendants, the cross-bill was dismissed without prejudice.

Plaintiff contends that the evidence viewed in the light most favorable to it shows that its trade name had acquired a secondary meaning, and that the defendant had unfairly used a simulation of it. In addition, it assigns error to the refusal of the court to admit certain testimony.

The defendant having moved to strike the evidence of the plaintiff, the effect was to submit the case for the decision of the chancellor, viewing the evidence in the light most favorable to plaintiff. The chancellor having sustained the motion, the question before us is whether the evidence, viewed as above stated, shows that the defendant was guilty of unfair competition. *Kiss* v. *Gale*, 187 Va. 667, 674, 675, 47 S. E. 2d 353.* In order to sustain its action for an injunction, the burden was on the plaintiff to show facts which clearly and satisfactorily entitled it to such relief. *Stoneman* v. *Wilson*, 169 Va. 239, 248, 192 S. E. 816. It must also be remembered that when a matter is submitted to the sound discretion of a chancellor, the determination will not be set aside unless it is shown to be clearly erroneous. 1 M. J., Appeal and Error, § § 277 and 278.

The evidence, so far as pertinent, may be summarized as follows:

In 1939, W. P. Rosso began trading as the "Open Air Market" at the present place of business of the plaintiff: 339 Campostella Road, in the City of Norfolk, Virginia. In 1944-45, he entered into a partnership with his brother, L. H. Rosso, and Vincent J. Mastracco, and they continued the business as "Open Air Market," under the

---

* By Code, § 8-122.1, Acts 1954, Chapter 605, the legislature modified the holding in *Kiss* v. *Gale*, *supra*, as to procedure after a motion to strike has been overruled.

firm name of Rosso and Mastracco. In 1948, the partnership altered its trade name by prefixing the word "Giant" to the words "Open Air Market," and continued thereafter as "Giant Open Air Market." Subsequently, the plaintiff's business was incorporated as Rosso and Mastracco, Incorporated.

The plaintiff corporation has advertised extensively by means of newspapers, radio, television and billboards throughout the City of Norfolk and the surrounding territory, Tidewater, Virginia, and Eastern North Carolina. Every one of its newspaper and billboard advertisements shows its trade name as "Giant Open Air Market." The newspaper advertisements described it as "Virginia's Most Unusual Store, Giant Open Air Market, Open Twenty-four Hours a Day, Campostella Road, at Campostella Bridge." However, on several occasions in its radio and television advertisements, it referred to itself as "Giant." Through honest advertising, reasonable or cheaper prices, and friendly treatment of customers, it has built up a very large business. Various kinds of merchandise have been included in addition to food and groceries, and a bakery shop opened.

In 1952 or 1953, some of plaintiff's officers and its general manager visited certain stores of the defendants in Washington, D. C., Alexandria and Richmond, and observed the character of the business conducted in their stores, the facilities offered, and the physical set-ups.

In June, 1956, officers of plaintiff saw a newspaper article announcing that the Giant Food Shopping Center of Virginia, Incorporated, had entered into a contract for the construction of a store to be opened by it under the name of "Giant Food" or "Giant Food Shopping Center." In November of that year, plaintiff repainted the sign above its store, which bore its trade name, and in the repainting increased the size of the word "Giant" substantially, and reduced the size of the words "Open Air Market." It then began to place more and more emphasis on the word "Giant" in its advertising. It also announced its intention to build a new store for its own use on the east side of Campostella Road, near its present location.

The June, 1956, advertisement of the defendants showed that they were planning the construction and operation of a store in the Southern Shopping Center in Norfolk, at Tidewater Drive and Little Creek Road, six or seven miles distant from the location of plaintiff's store. It contained a picture of the architects' conception

of the proposed building, which showed a sign at the top of the structure, consisting of the words "Giant Food." Below the picture there appeared the name "Giant Food Shopping Center of Virginia, Incorporated."

In March, 1957, defendant caused to be published in a Norfolk, Virginia, newspaper the following advertisement:

"Southern

Shopping Center

OPENS                              .

April   , 1957

Little Creek Road and Tidewater Drive.

GIANT

FOOD

36 Giant Supermarkets

Serving Maryland.

Virginia, And The

District of Columbia.

"Since 1947 Giant Food Stores have quadrupled in number with ten of America's most beautiful food stores now serving the Old Dominion state."

The first "Open Air Market" was what its name implies, that is, a market in the open; but as its business increased the major portion of its operations was conducted in a large one-story room. The exhibits show that the store buildings of the respective parties differ greatly in architecture, color, and equipment. The store of the plaintiff is somewhat outmoded in structure and in equipment, while defendant's store is modern in structure and in such particulars as light-

ing, color, space, and departmental service. The respective trade names as used are wholly different, except as to the word "Giant."

Plaintiff advertises as an unusual store; while defendant advertises not as one store but as a large chain of modern stores. The full names of each of the parties appearing on their stationery, on their signs, and on their advertisements are clearly different. The manner in which the respective names are used and displayed, the character and appearance of the two stores show a substantial variance and distinction.

In 1955, plaintiff, for the first time, filed a certificate under Virginia Code, § 59-169, the so called "Trader's Act," setting forth that it traded under the name of "Giant Open Air Market." At the same time, it also got its first business license under that trade name.

A majority of plaintiff's witnesses had never seen or heard of defendant's stores or its advertisements. About the time defendant announced the opening of its store, and the need for employees, the plaintiff announced its intention to build a new store for its own use. This operated to create some confusion in the minds of several witnesses as to the ownership and names of the new and proposed stores. It is apparent that the confusion was due to incidental circumstances, lack of investigation or failing to exercise reasonable care, rather than to any mere similarity in the respective trade names.

■ The doctrine of secondary meaning as an element of unfair competition embraces a great area of the law, and has been discussed and considered in many cases. The definition and elements of secondary meaning may be briefly stated as follows:

"Words and symbols used in connection with one's goods, services, or business, or physical attributes of goods, not capable of being appropriated as a technical trade mark, are deemed to have acquired a secondary meaning when they have become associated in the minds of purchasers or customers with the source or origin of goods or services rather than with the goods or services themselves." Annotation, 150 A. L. R., page 1079.

See also 87 C. J. S., Trade-marks, Trade-names and Unfair Competition, § 90, pages 319 *et seq.;* 52 Am. Jur., Trademarks, Trade-names and Trade Practices, § 72, pages 554 *et seq.*

"To constitute unfair competition in respect to a trade-name, two elements must be present. The name must have acquired a secondary meaning or significance that identifies the plaintiff, and the defendant must have unfairly used the name or a simulation of it, to the prej-

udice of the plaintiff's interests." 150 A. L. R., Annotation, page 1076.

One who claims that a name used by him in connection with his business has acquired a secondary meaning has the burden of proof, and that burden is a substantial one, that is, must be sustained by a fair preponderance of evidence or by substantial evidence sufficient to show that the use of the trade name by another will result to the prejudice of the complainant. 150 A. L. R. 1078.

Courts generally are in agreement that unfair competition is a question of fact, or of mixed law and fact, and each case must depend for its correct solution on its own peculiar facts and circumstances. *Crump Co. v. Lindsay*, 130 Va. 144, 160, 107 S. E. 679, 17 A. L. R. 747. 18 M. J., Trade-marks, Trade-names and Unfair Competition, § 4, page 488; 87 C. J. S. Trade-marks, Trade-names and Unfair Competition, § 100, pages 346 *et seq*. Cf. 52 Am. Jur., Trade-marks, Tradenames and Trade Practices, § 77, page 557.

Proof of confusion, or the likelihood of confusion, between trademarks or trade names is a fundamental issue when unfair competition is charged. In Virginia we have adopted the general rule that in determining the exercise of unfair competition in the use of trademarks or trade names, the test is whether the resemblance between them is so close that it is likely to confuse a prospective buyer or customer exercising ordinary caution in his dealings. *Va. Baking Co. v. Sou. Biscuit Works*, 111 Va. 227, 68 S. E. 261, 30 L. R. A. (N. S.) 167; *Crump Co. v. Lindsay, supra*. The judgment of the eye and the ear is more satisfying than other evidence as to the possibility that a party may be deceived so as to take one article or one store for that of another. *Glenmore Distilleries Co. v. National Distillers Products Corp.*, (Va.) 23 F. Supp. 928, affirmed in 101 F. 2d 479, Cert. denied 307 U. S. 632, 59 S. Ct. 835, 83 L. ed. 1515.

See also *Standard Brands, Inc. v. Eastern Shore Canning Co.*, (Va.) 172 F. 2d 144, Cert. denied 337 U. S. 925, 69 S. Ct. 1171, 93 L. ed. 1733; Vol. 3 Callman, Unfair Competition and Trade Marks, 2d Ed., pages 1444, 1461.

In *Va. Baking Co. v. Sou. Biscuit Works, supra*, in determining whether the marks "Crown" and "Jamestown" used on "ginger snaps" and "jumbles," respectively, infringed upon the use of the same names in connection with soda crackers and small cakes, known as "drops," this was said:

" 'It is not sufficient that some person might possibly be misled,

but the similarity must be such that "any person, with such reasonable care and observation as the public generally are capable of using and may be expected to exercise, would mistake one for the other.'" *International Trust Company* v. *International Loan & Trust Company*, 153 Mass. 271, 278, 26 N. E. 693, 695, 10 L. R. A. 758. (111 Va., page 230).

     \*     \*     \*     \*     \*     \*     \*

" 'The defendant will not be injoined from using certain trademarks or labels, when they are not so similar to the ones used by the plaintiff, in appearance or in connection of the words, as to deceive a person of ordinary intelligence, using ordinary care.'" *White* v. *Trowbridge*, 216 Pa. 11, 64 Atl. 862. (111 Va., pages 230, 231).

In *Crump Co.* v. *Lindsay*, 130 Va., *supra*, at page 160, we said with respect to unfair competition that "The essential element of unfair trading is deception, by means of which goods of one dealer are palmed off as those of another, whereby the buyer is deceived, and the seller receives the profit which, but for such deception, he would not have received." The same rule applies to unfair use of trade names tending to deceive.

The word "Giant," as found in the full name of each of the parties, is an adjective. In common and ordinary acceptance, it is descriptive of tremendous, or extraordinary, size. It is applicable to the size of the stores and the extent of their business operations. It bears no relation to the peculiar type or character of merchandise which the parties here offered for sale.

Plaintiff's trade name connotes a large open market area; while defendant's name connotes a large supplier of food. Viewed as common words, the respective trade names look and sound different. They bear no resemblance except in the use of the word "Giant." They are so different that there is no good reason why any person of ordinary intelligence, using reasonable care and observation, should confuse one with the other, either through the advertisements mentioned, or the physical character of the store buildings. There is a fundamental difference in appearance and sound, clearly distinguishable to the eyes and ears of an observant person. Confusion as to names is not shown by a mere casual misunderstanding, or mistaken ideas.

We find no merit in plaintiff's contention that the trial court erred in refusing to admit testimony concerning the operation and sales of the Giant Esso Center, a gasoline station. Neither plaintiff nor the defendant was engaged in the gasoline business and the Giant Oil Company, Incorporated, a subsidiary of the plaintiff, which operated the gasoline station, is not a party to this suit. There may have been a score, or more, of good reasons why Giant Esso Center increased its sales, such as location, surroundings, facilities, availability, prices charged, and services rendered.

Upon consideration of the whole evidence, we are of opinion that the plaintiff failed to show clearly and satisfactorily, that it has used the word "Giant" alone in such a manner as to give it a secondary meaning. Its actual trade name is "Giant Open Air Market," which has acquired a secondary meaning. We are further of opinion that the names "Giant Food" or "Giant Food Department Store" are not so similar to "Giant Open Air Market" as to deceive persons of ordinary intelligence, using ordinary care.

For the foregoing reasons, the decree of the trial court is affirmed.

*Affirmed.*