## Richmond

### The Cavalier Poodle Club, An Unincorporated Association, Et Al. v. The Cavalier Poodle Club, A Corporation.

March 7, 1966.

Record No. 6126.

Present, All the Justices.

*Howard I. Legum (Fine, Fine, Legum, Schwan & Fine*, on brief), for the appellants.

*J. Hume Taylor, Jr. (Cocke & Taylor*, on brief), for the appellee.

Buchanan, J., delivered the opinion of the court.

This is a suit in chancery for an injunction. It was brought by The Cavalier Poodle Club, an unincorporated association (Association) and The Cavalier Poodle Club of Tidewater, Virginia, Incorporated (Tidewater), "as their interest may appear," against The Cavalier Poodle Club, (Corporation). The litigants will usually be referred to by the words in parentheses.

The bill, which was filed April 28, 1964, alleged that the Association had been in existence for a number of years; that its purpose was to further the advancement of poodles and to conduct dog shows under the rules of the American Kennel Club; that it had been active in the Norfolk area where its name was well recognized and respected; that at a meeting on January 31, 1963, the members of the Association discussed the advisability of incorporating as The Cavalier Poodle Club, but subsequently on March 13, 1963, some of the members of the Association formed a corporation and wrongfully took over the name The Cavalier Poodle Club, and when the Association attempted to obtain a charter in that name it was necessary for another name to be used and the charter was accordingly issued in the name "The Cavalier Poodle Club of Tidewater, Virginia, Incorporated."

The bill further alleged that various poodle owners and enthusiasts have confused the Association and Tidewater with the Corporation to the injury of complainants, and they prayed for an injunction to restrain the Corporation from using the name "The Cavalier Poodle Club," and requiring it to amend its charter to a name that would not be confusing with the names of complainants.

The Corporation filed its answer and a cross-bill but afterwards withdrew the cross-bill. The court heard the complainants' evidence *ore tenus*. After hearing the testimony of the last president and the last treasurer of the Association, the chancellor ruled that the Association was no longer in existence and should be dismissed as a party complainant, and that the only question remaining was whether Tidewater was entitled to an injunction. However, counsel for complainants stated that he desired to put in additional testimony and was allowed to do so. On completion of the testimony offered by complainants their bill was dismissed. They have appealed and assigned error to the action of the court in refusing the injunction prayed for and dismissing their bill.

From the evidence offered by the complainants these relevant facts appear:

In the early days of 1963 dissension arose in the Association. At

a meeting of the board on January 31, 1963, three members of the Association were dropped for non-payment of dues, and therefore, the minutes stated, "no further action can be considered on the charges that were preferred." At that meeting the advisability of incorporating was discussed. On February 25, 1963, the chairman and five members of the show committee wrote to Dr. Levin, then president of the Association, that the committee was suspending him from the privileges of the American Kennel Club for ninety days for reasons stated in the letter. At a special meeting of the Association on February 28, 1963, held in spite of disorder caused by twelve members whose names were listed in the minutes, the resignation of the vice-president and show chairman of the Association was accepted.

Following these occurrences three members of the Association applied for a charter for The Cavalier Poodle Club, the defendant, and the charter was accordingly issued on March 13, 1963. Later in the same month, on application of other members of the Association, a corporate charter was issued to The Cavalier Poodle Club of Tidewater, Virginia.

In January, 1963, the Association had a total of fifty-five members. Of these thirteen joined The Cavalier Poodle Club, the defendant corporation. Most of the remaining forty-two are members of Tidewater. Dr. Levin testified that "a lot" left the Association in disgust because of the bickering and fighting but that approximately forty joined Tidewater.

After the incorporation of Tidewater the former treasurer of the Association became the treasurer of Tidewater. She has since paid her dues to Tidewater and has paid none to the Association. All the members of her "group" went into Tidewater. She kept the treasurer's book of the Association and now uses the same book for Tidewater. The bank account of the Association still has in it eighteen or nineteen dollars, but there has been no activity in the account since the fight in the Association. There has been no meeting of the Association since the spring of 1963. All the membership dues since 1963 have been deposited in the account of Tidewater.

After its incorporation Tidewater issued a publication called "Poodle Patter," on the front page of which, under the heading "Notice" is a statement that The Cavalier Poodle Club was recently incorporated with a slight addition to the club name, which is "The Cavalier Poodle Club of Tidewater Va. Inc." Then follow these statements:

"The Cavalier Poodle Club of Tidewater Virginia, Inc. is the only poodle club recognized by the Poodle Club of America and the American Kennel Club, in representing the poodle breeder, exhibitor and fancier in the entire Tidewater and surrounding area.

"The Cavalier Poodle Club of Tidewater Virginia, Inc. IS NOT CONNECTED WITH, IS NOT PART OF, IS NOT REPRESENTED BY, any other group or groups using a similar name or names as that of The Cavalier Poodle Club of Tidewater Virginia, Inc."

The complainants argue that there has been no dissolution of the Association because its constitution and by-laws provide that "The Club may be dissolved at any time by the written consent of not less than 2/3 of the members" and that this has never been done. That is true, but as the trial court observed in that connection, "If those things that keep things in existence do not happen" then the thing is ended.

The constitution and by-laws of the Association also provided that there should be monthly meetings of the members; that no member should vote if his dues were unpaid for the current year; and that membership is automatically terminated if dues are not paid for ninety days after January 1.

If, as indicated by the evidence, there have been no meetings of the Association, no activity, no dues paid, no members, and no exercise of its functions or purposes, coupled with the public assertion by Tidewater that it is the only poodle club recognized by the national organization as representing the poodle breeders, etc., in the whole area, then the trial court was well warranted in holding that the Association has been abandoned and no longer exists. This finding, after an *ore tenus* hearing, as we have many times said, is presumed to be correct, and is not to be set aside unless plainly wrong or without evidence to support it. *Packard Norfolk, Inc.* v. *Miller*, 198 Va. 557, 95 S.E.2d 207; *Barnes* v. *Craig*, 202 Va. 229, 117 S.E.2d 63; *Wright & Hunt, Inc.* v. *Wright*, 205 Va. 454, 137 S.E.2d 902.

In *Colored Y.M.C.A.* v. *Central Y.M.C.A.*, 201 Va. 142, 109 S.E.2d 415, Colored YMCA had experienced financial difficulties and its members became members of the Hunton Branch of the YMCA, an affiliate of Central YMCA. A group of former members sought to revive Colored YMCA and to manage the affairs of Hunton Branch. We held it had no such right because the Colored YMCA, although it had not surrendered its charter, had in all other respects

ceased to exist. See also 10 C.J.S., Beneficial Associations, § 20, p. 261.

Complainants place much reliance on the case of *Grand Lodge I.B.P.O. Elks* v. *Grand Lodge I.B.P.O. Elks*, 4 Cir., 50 F.2d 860. There the complainant, a New Jersey corporation, sued a Virginia corporation and certain individuals to enjoin them from using the name of the complainant. The individual defendants had attempted to secede from the Grand Lodge of the complainant and set up an independent order under practically the same name. It was held that "If the Virginia members were dissatisfied, they, of course, had a right to withdraw and organize a new order; but they had no right, if they did so, to adopt the name of the original order or to hold themselves out as a branch of that order." In such case, it was said, where injury will result, courts of equity, at the suit of the injured parties, will restrain the further perpetration of the wrong. There, however, the complainant was an existing, functioning corporation and was being injured. Here the Association no longer exists, no injury can result to a non-existing association, and it has no standing to maintain this suit.

Similarly, in *Miller* v. *Union of United Brewery*, 187 Va. 889, 48 S.E.2d 252, the complainant union, which was held to be entitled to the assets involved as against the dissident members who had withdrawn and formed another union, had "never ceased to exist," as the opinion pointed out.

Tidewater, the other complainant in the bill, likewise failed to establish its right to an injunction and the action of the court in dismissing the bill as to it was without error. Those members of the Association which left it and formed Tidewater had no exclusive right to use the name of the old Association as part of its corporate name.

In the case of *I.F. & A.M. Masons* v. *Most Worshipful, etc.*, (Ky.), 318 S.W.2d 46, 76 A.L.R.2d 1386, Anno. 1396, the court, in upholding an injunction against the appellants, said that the lodge under which they claimed had died or ceased to operate, and they therefore had encountered one of the principles of the doctrine of unfair competition "that where a right to use a trade name is abandoned or forfeited, the first to reappropriate the name acquires priority. Nims, Unfair Competition and Trade-Marks, § 408; 10 C.J.S., Beneficial Associations, § 13; 87 C.J.S., Trade-Marks, etc., § 30."

When the incorporators of Tidewater applied for its charter they

learned that a charter had already been issued to The Cavalier Poodle Club, the defendant; so, as the complainants alleged in their bill, it was necessary "for another name to be used, and the name The Cavalier Poodle Club of Tidewater, Virginia, Incorporated was used."

Section 13.1-6 (c) of the Code provides that the corporate name given to a corporation "Shall not be the same as, or confusingly similar to, the name of any corporation, whether issuing shares or not issuing shares, existing under the laws of this State * *."

Complainants in effect concede that the incorporators applied for a name that would not be confusingly similar to the name already given to the defendant by its charter. They could have chosen some other name if they had thought the name they chose might be confused with an existing name. Evidently the name so applied for and given was considered by the State Corporation Commission not to be confusingly similar. We held in *Rosso and Mastracco* v. *Giant Food*, 200 Va. 159, 104 S.E.2d 776, that "Confusion as to names is not shown by a mere casual misunderstanding, or mistaken ideas" and this statement was quoted with approval:

" 'It is not sufficient that some person might possibly be misled; but the similarity must be such that "any person, with such reasonable care and observation as the public generally are capable of using and may be expected to exercise, would mistake one for the other.' " *International Trust Co.* v. *International Loan & Trust Co.*, 153 Mass. 271, 278, 26 N.E. 693, 695, 10 L.R.A. 758; *Va. Baking Co.* v. *Sou. Biscuit Works*, 111 Va. 227, 230, 68 S.E. 261, 262.

The defendant was first in time and hence first in right to use the name of the old Association; and in addition the evidence offered by the complainants did not establish a confusing similarity of names.

The decree appealed from is

*Affirmed.*